IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK DALE FONTROY, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| JEFFREY A. BEARD, et al., | : | |
| Defendants | : | NO.    02-CV-2949 |

## ORDER

AND NOW, this _____ day of _____ 2003, it is ORDERED that

Defendants' to Dismiss the Amended Complaint (Document 44) is GRANTED.  This

action is DISMISSED.


BY THE COURT:


_____

THOMAS N. O'NEILL, JR.,    J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DERRICK DALE FONTROY, et al.,              :        CIVIL ACTION

                Plaintiffs              :

        v.                                      :

JEFFREY A. BEARD, et al.,                  :

               Defendants              :        NO.    02-CV-2949

## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants hereby move the Court pursuant to Fed.R.Civ.P. 12(b)(1) and (6)

and 42 U.S.C. §§ 1997e(a) and 1997e(c) to enter an order dismissing this action

because:

    1.     Plaintiffs fail to present a case or controversy;

    2.     The Amended Complaint fails to state a claim upon which relief may

be granted;

    3.     Plaintiffs have failed to exhaust administrative remedies.

                            D. MICHAEL FISHER
                            ATTORNEY GENERAL

              BY:   s/ John O. J. Shellenberger

                     John O.J. Shellenberger
                     Chief Deputy Attorney General
                     Identification No. 09714

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA  19107-3603
Telephone:  (215) 560-2940

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK DALE FONTROY, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| JEFFREY A. BEARD, et al., | : | |
| Defendants | : | NO.   02-CV-2949 |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS THE AMENDED COMPLAINT**

Plaintiffs have now filed an Amended Complaint (Document 44) challenging the constitutional validity of the Pennsylvania Department of Corrections policy on mail effective September 30, 2002 insofar as it relates to mail sent to inmates by attorneys and courts and, they have added, state elected officials. Defendants ask that this Amended Complaint be dismissed for the reasons they have previously argued in response to the original complaint and a motion for preliminary injunction.  Defendants incorporate by reference their Brief in support of their motion to dismiss the original complaint, their Response to Plaintiffs' Motion For Emergency Temporary Restraining Order and Preliminary Injunction, and their Brief in support of their Motion to Dismiss for Mootness or Failure to Exhaust Administrative Remedies, copies of which are appended to this Motion.  The Court may disregard the portion of the last Brief dealing with mootness, but need only apply the portion relating to failure to exhaust administrative remedies, which remains valid.

Defendants add a few remarks.

Defendants' basic point is that the mail policy does not impair any of plaintiffs' constitutional rights such that it requires any justification.  In addition to cases cited in earlier briefs, *see Keenan v. Brown*, 83 F.3d 1083, 1094 (9th Cir. 1996)(mail from the courts is not "legal mail"); *Mann v. Adams*, 846 F.2d 589 (9th Cir. 1988)(mail from public agencies and public officials need not be given any special treatment).  However, defendants note that plaintiffs are not claiming that defendants are treating mail from attorneys, courts, and elected officials in a manner more harmful than all other mail.  They are complaining that defendants are not giving this mail preferred treatment, as plaintiffs prefer it.  Plaintiffs want all mail that purports to be from attorneys, courts, or elected officials unsealed only in their presence.  This preferred treatment by its nature requires additional staff time and effort, which translates into additional expense, particularly if all mail is to be delivered promptly.  The expense saving, along with the important security need to inspect all incoming mail for contraband, and to inspect it safely, justify whatever minimal impairment of constitutional rights the policy might cause. *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993); *Altizer v. Deeds*, 191 F.3d 540 (4th Cir. 1999).

The Amended Complaint alleges that plaintiffs have suffered actual injury because on occasion what they refer to as "legal mail" has been placed in other inmates' cells or has been missing pages.  However, they have not pleaded that they have suffered actual injury to any non-frivolous underlying claims, which is what is

2

legally required for an access to courts claim.  *Lewis v. Casey*, 518 U.S. 343, 351-354
(1996).  Even more clearly, they have not pleaded any underlying claim that has
been injured, as is also required.  *Christopher v. Harbury*,  122 S.Ct. 2179, 2186-88
(2002).

        Moreover, the kind of occasional operational problem evidenced by
misdelivered or damaged mail (a problem we all experience) is the kind of problem
most amenable to remedy through the internal grievance procedure.  The
declarations that defendants have submitted show that none of the plaintiffs have
grieved the existence or application of the September 30, 2002 policy to the
Department of Corrections Office of Grievances and Appeals.  The conclusory
declaration that plaintiffs have attached to their Amended Complaint, without
attachment of any evidentiary documents, cannot overcome this record evidence.  If
plaintiffs are now pursuing grievances, the Court must still dismiss the action.
Under 42 U.S.C. § 1997e(a), a prisoner must exhaust administrative remedies
*before* filing suit.  *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002).


                                        D. MICHAEL FISHER
                                        ATTORNEY GENERAL


                                BY:   s/ John O. J. Shellenberger
                                        John O.J. Shellenberger
                                        Chief Deputy Attorney General
                                        Identification No. 09714

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA  19107-3603
Telephone:  (215) 560-2940

                                        3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK DALE FONTROY, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| GOVERNOR MARK SCHWEIKER, et al., | : | |
| Defendants | : | NO.  02-CV-2949 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## STATEMENT OF THE CASE

The four plaintiffs allege that they are currently incarcerated at the State Correctional Institution at Graterford.  They have sued the Governor of Pennsylvania, the Secretary of the Pennsylvania Department of Corrections, the Superintendent of Graterford, The Grievance Coordinator employed at Graterford, and the Mail Room Supervisor employed at Graterford.  Plaintiffs request that the Court declare unconstitutional portions of a regulation and an implementing policy regarding mail sent to inmates by attorneys and courts.  They request that the Court enjoin the operation of the regulation and policy.

Defendant Jeffrey A. Beard, the Secretary of Corrections, moves to dismiss the action because it presents no current case or controversy and because it fails to state a federal claim upon which relief may be granted.  To Secretary Beard's knowledge, he is the only defendant who has been served with process.

The regulation in question is found at 37 Pa.Code § 93.2 (copy attached hereto), and the implementing policy is designated DC-ADM 803. A copy of the policy is attached to the Complaint. It provides that "Inmates shall be permitted to correspond with the general public, their attorney, and public officials." § VI.A.1. It provides that in general the facility's mailroom staff will open all incoming correspondence in the mail room, inspect it for contraband, then deliver it to the inmate addressee. §§ VI.D.1.a.; VI.E.2, 3. It may be read upon the written order of the facility manager only when "there is reason to believe that the security of the facility may be threatened, that this directive is being violated, or there is evidence of criminal activity or of a misconduct offense." § VI.D.1.c.

The policy provides a different procedure for what it defines as "Incoming Sealed Privileged Correspondence." This is, essentially, material that has been hand delivered by an attorney to a Department of Corrections facility and searched in the presence of the person making the delivery. This mail is then to be sealed, delivered to the inmate, and opened only in the inmate's presence. §§ VI.B.2; VI.D.1.; VI.E.2.e.[1]

The policy was to go into effect June 24, 2002, but its implementation has been delayed. *See* Declaration of Michael A. Farnan, attached.

---

[1] Outgoing mail from inmates to attorneys and courts is not to be opened outside the inmate's presence, except in limited circumstances. §§ IV.N.1., VI.B.1., VI.D.2. Inmates place their outgoing mail in collection boxes on their housing units, and it is generally not opened at the prison at all. § VI.E.1.; 37 Pa.Code § 93.2(d).

The Complaint does not allege any underlying legal claims of the plaintiffs, or any other inmates, that the policy will injure.

## ARGUMENT

## I.    STANDARD APPLICABLE TO MOTION TO DISMISS.

In deciding a motion to dismiss, the court must accept all material factual allegations in the complaint as true and construe them in the light most favorable to the party opposing the motion.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, the Court need not credit broad conclusions unsupported by the factual allegations.  *Morse v. Lower Merion School District*, 132 F.3d 902, 908, 909 (3d Cir. 1997); *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 23, 24 (1st Cir. 1990); *The Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989).  If the facts alleged in the complaint, and inferences and implications reasonably proceeding from them, would not entitle the plaintiff to any relief as a matter of law, the complaint should be dismissed for failure to state a claim upon which relief may be granted.  If the facts do not imply that the plaintiffs have suffered or are in imminent danger of suffering an actual injury caused by the allegedly illegal conduct of the defendants, the action should be dismissed for failure to present a current case or controversy.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102-104 (1998).

3

## II.    THE COMPLAINT FAILS TO STATE EITHER A CURRENT CASE OR CONTROVERSY OR A VALID CAUSE OF ACTION BECAUSE IT DOES NOT ALLEGE THAT THE POLICY WILL CAUSE PLAINTIFFS TO SUFFER ACTUAL INJURY TO A NON-FRIVOLOUS CLAIM.

Plaintiffs claim that the challenged policy will violate their First, Sixth, and Fourteenth Amendment rights.  At first glance, it does not implicate any of these provisions: it does not prevent inmates from speaking or petitioning, it does not prevent them from receiving mail, it does not deprive them of criminal trial counsel, it does not deprive them of life, liberty or property.  *See Wolff v. McDonnell*, 418 U.S. 539, 575, 576 (1974).  However, the courts have recognized a constitutional right of "access to the courts," which Plaintiffs also cite and which is supported by the cited amendments.  *See Bounds v. Smith*, 430 U.S. 817 (1977); *Lewis v. Casey*, 518 U.S. 343 (1996).

For a time, various courts, including the Third Circuit, held that prison officials violated an inmate's access to court rights when they consistently opened outside the inmate's presence mail sent to the inmate by his attorney or the courts. *See Bieregu v. Reno*, 59 F.3d 1445 (3d Cir. 1995).  They found a violation without asking whether the mail opening had caused the inmate any actual injury.

In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court held that a convicted prisoner presents no case or controversy regarding his access to court rights unless he can show actual or truly imminent injury to a non-frivolous legal claim challenging the constitutionality of his conviction or the conditions of his confinement.  The mail opening issue had to be reconsidered in light of *Lewis*.  The

4

Third Circuit held that *Lewis* had effectively overruled its *Bieregu* decision.  *Oliver v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997).  An inmate who claimed interference with his legal mail, even outgoing mail, could not proceed when he did not allege actual injury to a legal claim.  *Id.*

The Supreme Court has recently discussed the required elements of a valid access to courts claim.  *Christopher v. Harbury*,  122 S.Ct. 2179 (2002).  The Court emphasized that the access to court right is ancillary to some underlying claim that the plaintiff wished or wishes to bring to court.  122 S.Ct. at 2186, 87.  The plaintiff must describe that underlying claim in the complaint, and it must be "non-frivolous" or "arguable," or else he cannot pursue a claim that he was denied access to the courts.  122 S.Ct. at 2187.  Indeed, the plaintiff must plead the underlying claim as specifically as any claim pursuant to Fed.R.Civ.P. 8(a).  122 S.Ct. at 2188.

Here, the Complaint does not allege that the challenged policy will cause actual injury to any claim.  The Complaint does not describe any underlying claims that the policy will allegedly injure.

Even if the Court could assume non-frivolous underlying claims, the Complaint does not allege how the policy would cause them real injury.  By its nature, the policy will not cause any injury.  The policy will not prevent inmates from receiving mail from attorneys and the courts.  Claims will not suffer injury just because a mail room employee opens the mail and inspects it for contraband before delivery to inmates.  Under *Lewis* and *Harbury*, plaintiffs present neither a real case or controversy nor a claim upon which any relief may be granted.

5

The principal opinion in *Bieregu* also seemed to find that the prisoner had a First Amendment right, apart from his access to court right, to have mail from attorneys and courts opened in his presence, which right the prison officials had insufficient reason to restrict. However, this view cannot be the law now. Even at the time, one member of the *Bieregu* panel questioned it, and the *Oliver* court later overruled *Bieregu* without any exception. The *Oliver* court affirmed entry of judgment against a prisoner whose outgoing legal mail had been opened by prison officials, even though, for outgoing mail, the prisoner's speech interests were stronger and the prison's security concerns were weaker than for incoming mail.

Several other circuit courts have held that prison officials do not violate the First Amendment when they regularly open prisoners' legal mail, incoming or outgoing, outside the prisoners' presence only to inspect it for contraband. *Altizer v. Deeds*, 191 F.3d 540 (4th Cir. 1999); *Brewer v. Wilkenson*, 3 F.3d 816, 825 (5th Cir. 1993). The Supreme Court has noted with respect to prisoner legal mail that "freedom from censorship is not equivalent to freedom from inspection or perusal." *Wolff v. McDonnell,* 418 U.S. at 576. Certainly for incoming mail, these decisions should be followed. Incoming mail is not the speech of the inmate, mere opening and inspection of it does not affect First Amendment interests, and prison officials have a strong security need to inspect material coming into the prison to be sure that it does not contain dangerous substances (e.g., drugs, chemicals, explosives) or other items that can interfere with the secure and safe operation of the prison (e.g., weapons, escape tools, maps, money). Attorneys are not above attempting to mail

6

dangerous items into the prisons; more nefarious persons can acquire or make envelopes with attorneys', or even courts', names on them. The inspection can be done more safely, quickly, and reliably by mail handling staff with protective clothing in a mail handling area away from prisoners.

The policy here regularly authorizes mail room employees only to inspect incoming mail for contraband. It does not permit staff generally to read, withhold, or censor the incoming mail. Whatever minimal effects the policy might have on First Amendment interests are outweighed, as a matter of law, by the prisons' security needs.

The policy challenged here does permit the facility manager to permit staff to read incoming mail if that manager has reason to believe that the security of the facility may be threatened or that the mail policy is being violated, or if he has evidence of criminal activity or a misconduct offense. § VI.D.c. However, plaintiffs do not allege that they are in imminent danger of having their mail read under this provision. If they are challenging this portion of the policy, they present no current case or controversy.

7

## CONCLUSION

The Court should dismiss this action.  Although the defendants other than Secretary Beard have not been served and so have not yet moved, the Court should dismiss the action as to them pursuant to 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c).  These sections require the Court to dismiss an action brought by a prisoner if it fails to state a claim upon which relief may be granted.[2]

<div style="margin-left: 45%">

D. MICHAEL FISHER
ATTORNEY GENERAL


BY:   s/ John O.J. Shellenberger
        John O.J. Shellenberger
        Chief Deputy Attorney General
        Identification No. 09714

</div>

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA  19107-3603
Telephone:  (215) 560-2940
Fax:   (215) 560-1031

---

[2] Plaintiffs have filed various motions for temporary or preliminary relief. These fall with the Complaint.  Certainly, plaintiffs are not in danger of immediate irreparable harm and they have no reasonable likelihood of success on the merits. *See Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DERRICK DALE FONTROY, et al.,     :       CIVIL ACTION

           Plaintiffs      :

    v.                 :

GOVERNOR MARK SCHWEIKER, et al.,   :

           Defendants    :      NO. 02-2949

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### STATEMENT OF THE CASE

The original complaint requested that the Court declare unconstitutional portions of a Pennsylvania Department of Corrections policy regarding mail sent to inmates by attorneys and courts. The challenged policy was scheduled to go into effect June 24, 2002, and a copy of it was attached to the Complaint. The policy provided that, in general, each correctional facility's mailroom staff would open all incoming inmate correspondence in a mailroom, inspect it for contraband, then deliver it to the inmate addressee. It provided a different procedure for what it defined as "incoming sealed or privileged correspondence." This was material that had been hand delivered by an attorney to a Department of Corrections facility and searched in the presence of the person making the delivery. This mail was then to be sealed, delivered to the inmate, and opened again only in the inmate's presence.

Defendants moved to dismiss the original complaint for failure to state a claim upon which relief may be granted. As stated in that motion, implementation

of the policy referenced in the original complaint was delayed.  It did not go into

effect on June 24, 2002.

Plaintiffs have now filed a Motion for Emergency Temporary Restraining

Order and Preliminary Injunction in which they allege that the Department of

Corrections is implementing a new inmate mail and incoming publications policy,

effective September 30, 2002.  The Motion includes that policy as its Exhibit A, and

a copy of it is also attached to this Response.

The Inmate Mail and Incoming Publications Policy, DC-ADM 803, effective

September 30, 2002, is the same as the policy that was to go into effect in

June 2002, except that it expands the definition of "incoming privileged

correspondence" to include correspondence marked with an "attorney control

number."  Section VI.B.2.b.  As before, the Policy provides that "inmates shall be

permitted to correspond with the general public, their attorneys, and public

officials."  Section VI.A.1.  As before, the Policy provides that incoming inmate mail

may be read only upon the written order of the facility manager and only when

"there is reason to believe that the security of the facility may be threatened, that

this directive is being violated, or there is evidence of criminal activity or of a

misconduct offense."  Section VI.D.1.c.  As before, the Policy provides for "sealed

privileged mail,"  which is material that has been personally delivered to a

Department of Corrections facility,  searched in the presence of the person making

the delivery, sealed in an envelope, delivered to the inmate, and then opened only in

the inmate's presence.  Sections VI.B.2.a; VI.D.1.a; VI.E..2.e.  However, the Policy

2

now also provides that an attorney may obtain an attorney control number from the Department of Corrections. If the attorney places that control number on the envelope mailed through the Postal Service to an inmate, that mail will be opened for the first time in the presence of the inmate. Section VI.B.2.b.

The Court should deny Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

## ARGUMENT

A Court may not enter a preliminary injunction unless the moving parties have shown (1) that without the injunction they will suffer immediate and irreparable harm pending final judgment and (2) that they have a reasonable likelihood of ultimate success on the merits. The Court must also weigh the harm that an injunction would cause the defendants, other persons not before the court, and the public interest. *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999). If the harm done by an injunction would outweigh its benefits, it should not be entered.

Because this is an action with respect to prison conditions, any preliminary injunction justified under the usual criteria would also have to meet the requirements of 18 U.S.C. § 3626(a)(2). That is, the relief would have to be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). The Court must further "give

substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." *Id.*

## I.    PLAINTIFFS DO NOT ALLEGE THAT THEY WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION.

Plaintiffs' Motion does not allege that any of them are likely to suffer immediate and irreparable harm in the absence of a preliminary injunction. Plaintiffs do not allege that they currently have attorneys who are likely to send them material through the mail.  Plaintiffs do not allege that, other than this case, they have any litigation active in any court.  Plaintiffs do not allege that they are currently likely to receive any mail from attorneys or the courts of a confidential nature.

## II.    PLAINTIFFS HAVE NO REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS.

Defendants incorporate by reference their Motion to Dismiss the original Complaint and the Memorandum of Law submitted in support of that Motion.

Plaintiffs' current Motion states, "this is not an 'access to the Courts' claim, but a right to privacy and free expression claim."  Motion, ¶ 10.  Plaintiffs claim that the Department of Corrections Inmate Mail Policy violates their First, Fourth, Sixth, and Fourteenth Amendment rights.  Motion ¶ 12.  However, the Policy violates none of plaintiffs' constitutional rights.

Plaintiffs claim that the Policy violates their First Amendment right to freedom of speech.  However, the Policy does not affect plaintiffs' right to speak.

4

The portion of the Policy about which plaintiffs complain deals with mail sent to them by others, not mail that they have written or prepared themselves. The major Supreme Court cases analyzing the First Amendment rights of prisoners regarding mail have found that senders of mail, not recipients, have rights. *Shaw v. Murphy*, 121 S.Ct. 1475 (2001) (right of inmate to send mail to another inmate); *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989) (publishers have a First Amendment interest in access to prisoners); *Turner v. Safley*, 482 U.S. 78 (1987) (right of inmates who desire to correspond with inmates at other correctional facilities); *Procunier v. Martinez*, 416 U.S. 396 (1974) (right of inmates to correspond with persons outside the prison). In *Wolff v. McDonnell*, 418 U.S. 539, 575, 576 (1974), the Court specifically stated that it had not recognized a First Amendment right of prisoners to receive correspondence.

Even if a prisoner has a First Amendment right against government interference with correspondence sent to him, the current Department of Corrections Policy does not interfere with that right. Inmates, including plaintiffs, can still receive mail. They can receive it from attorneys and the courts. Although not relevant to the First Amendment, they can even have the envelope's seal broken only in their presence, if their correspondents get control numbers (or personally deliver the material to a Department facility).

In *Wolff*, the Supreme Court found the substantial equivalent of the control number procedure to be "all, and perhaps even more, than the Constitution requires." 418 U.S. at 577. There, the State opened correspondence in the presence

5

of the inmate only if it was specially marked as originating from an attorney, including the attorney's name and address.  The Court added, "it would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, *first* identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar."  418 U.S. at 576, 577.  The control number does just that:  it assures that the correspondents are really attorneys.  Before issuing a control number, the Department of Corrections can verify that the requestor is really a member of the Bar.  Only those verified as members of the Bar (or court personnel) get control numbers that give their correspondence special privileges.  If an attorney's control number falls into non-attorney hands, the Department can give the attorney a new number and retire the defective number.

The Fourth Amendment gives plaintiffs no rights.  The Fourth Amendment guarantees freedom from unreasonable searches and seizures.  However, the Supreme Court has held that it essentially does not apply in prisons.  *Hudson v. Palmer*, 468 U.S. 517, 526-530 (1984).  The Fourth Amendment does not restrain prison officials' right to open plaintiffs' mail and inspect it for contraband.

The Courts have rather uncertainly found a right to privacy in the Fourteenth Amendment, a right that protects the individual's interest in avoiding disclosure of personal matters.  *See Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001).  Some courts have found that it protects prisoners in a limited way and only for very personal information.  *Id.* (Inmate has a constitutional right to privacy in certain

6

medical information.)  Under this concept, an inmate cannot have a right of privacy in incoming mail unless that mail contains very personal information about the inmate, an unlikely circumstance.  Certainly an inmate has no right to privacy in material that is a matter of public record or otherwise available to the public such as court orders, court decisions, court forms, publications, and the like.  Thus, an inmate has no right to privacy in any mail that the courts might send him.  The courts do not send litigants material that is not publically available.  *See Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987).

Even for correspondence in which plaintiffs might have genuine privacy interests, the Department of Corrections Policy does not infringe those interests.  Under the Policy, prison officials do not read the correspondence, except in limited circumstances for genuine security reasons, and even then only by a limited number of people.  Morever, attorneys, the persons most likely to convey private information, can easily get control numbers to affix to their mail to assure that it is opened only in the presence of the inmate.  Even if the Policy infringes the inmate's right to privacy to some degree, the infringement is justified under the same standards as applied to restrictions on inmates' First Amendment protected activities.  *See Doe v. Delie*, 257 F.3d at 317; *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993); *Altizer v. Deeds*, 191 F.3d 540 (4th Cir. 1999).

Finally, the Department of Corrections Policy does not violate any rights plaintiffs might have under the Sixth Amendment.  The Sixth Amendment only guarantees counsel to defend a person from criminal charges through trial.

7

Plaintiffs' trials are over; they would not be housed in a state correctional institution had they not been convicted and sentenced.  While the Equal Protection Clause gives them a right to counsel through their first appeal, they do not have any further constitutional right to counsel.  *Pennsylvania v. Finley*, 481 U.S. 551 (1987).  More importantly, however, nothing in the Department of Corrections Inmate Mail Policy interferes with plaintiffs' ability to have counsel.  Plaintiffs can send mail to counsel.  Counsel can send mail to plaintiffs.  Counsel's mail will not be read or censored, and, by obtaining an attorney control number, counsel can assure that the mail is opened only in the inmate's presence.

## CONCLUSION

The Court should deny Plaintiffs' Motion for Emergency Temporary Restraining Order and Preliminary Injunction.

D. MICHAEL FISHER
ATTORNEY GENERAL


BY:   s/ John O.J. Shellenberger
         John O.J. Shellenberger
         Chief Deputy Attorney General
         Identification No. 09714

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA  19107-3603
Telephone:  (215) 560-2940
Fax:   (215) 560-1031

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK DALE FONTROY, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| GOVERNOR MARK SCHWEIKER, et al., | : | |
| Defendants | : | NO. 02-2949 |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

## STATEMENT OF THE CASE

Plaintiffs, four inmates under the custody of the Pennsylvania Department of Corrections, filed the Complaint on May 16, 2002.  It requests that the Court declare unconstitutional portions of a proposed Pennsylvania Department of Corrections policy regarding mail sent to inmates by attorneys and courts.  The challenged policy was to go into effect June 24, 2002.  It provided that, in general, each correctional facility's mailroom staff would open all incoming inmate correspondence in a mailroom, inspect it for contraband, then deliver it to the inmate addressee.  It provided a different procedure for what it defined as "incoming sealed or privileged correspondence."  This was material that had been hand delivered by an attorney to a Department of Corrections facility and searched in the presence of the person making the delivery.  This mail was then to be sealed, delivered to the inmate, and opened again only in the inmate's presence.

Defendants moved to dismiss the Complaint for failure to state a case or controversy and failure to state a claim upon which relief may be granted.  As

stated in that Motion, implementation of the policy referenced in the Complaint was delayed. It did not go into effect on June 24, 2002. On July 30, 2002, Plaintiffs moved for a stay of proceedings, which Defendants did not oppose.

Despite their Motion for Stay, Plaintiffs attempted to amend their Complaint to add averments and claims unrelated to those made in the original Complaint. The Court rejected these attempts to amend, "without prejudice to plaintiffs' right to file an amended complaint limited to the subject of Pennsylvania Department of Corrections policies regarding mail sent to inmates by attorneys and courts."

Plaintiffs appealed the Court's rejection of their attempts to file an amended complaint. The Court of Appeals dismissed the appeal and returned the record to this Court.

On September 24, 2002, while their appeal was pending, Plaintiffs filed a Motion for Emergency Temporary Restraining Order and Preliminary Injunction in which they alleged that the Department of Corrections was about to implement a new inmate mail policy, effective September 30, 2002. The Motion included a copy of that policy as its Exhibit A. Defendants responded to the Motion and also attached a copy of the new policy to their Response. The new policy, DC-ADM 803, shows that it was issued September 1, 2002, and became effective September 30, 2002.

The Inmate Mail and Incoming Publications Policy, DC-ADM 803, effective September 30, 2002, is the same as the policy that was to go into effect in June 2002, with one substantial exception. The new Policy expands the definition

2

of "incoming privileged correspondence" to include correspondence marked with an "attorney control number." Section VI.B.2.b. The Policy now provides that an attorney may obtain an attorney control number from the Department of Corrections. If the attorney places that control number on the envelope mailed through the Postal Service to an inmate, that mail will be unsealed in the presence of the inmate. Section VI.B.2.b.

Plaintiffs have not filed or asked to file an amended complaint regarding mail sent to inmates by attorneys and courts. The only complaint on file challenges the policy that did not go into effect.

The Department of Corrections has an Inmate Grievance System under which inmates may submit grievances about anything that touches their lives as inmates. DC-ADM 804, attached to Declaration of Tshanna Kyler, submitted as an attachment to this Motion. Disposition of a grievance may be appealed first to the facility manager (the superintendent), then to the Department's Office of Grievances and Appeals. None of the Plaintiffs have presented a grievance to the Office of Grievances and Appeals regarding the issuance or application of the DC-ADM 803 on Inmate Mail that became effective September 30, 2002. Declaration of Tshanna Kyler, attached.

## ARGUMENT

## I.   THE CLAIMS STATED IN THE ONLY FILED COMPLAINT ARE MOOT.

The Complaint challenges a policy that has never gone into effect and, since it was replaced, appears unlikely to go into effect. Even if the Complaint once

stated a live case or controversy with respect to that never effected policy, it states none now.[3]

　　To establish a justiciable case or controversy, a plaintiff must have suffered, be suffering, or be in imminent danger of suffering a real injury in fact.  The injury must be caused by the allegedly illegal conduct of the defendant, and the court must be able to redress or prevent the injury.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 2136 (1974).  When a controversy lived because of prospective danger, and that prospective danger no longer exists, the court no longer has a controversy to hear; the case is moot.  *DeFunis v. Odegaard*, 416 U.S. 312 (1974).  That is, a case is moot when the plaintiff has not suffered, is not suffering, and is not in imminent danger of suffering a real injury caused by the allegedly illegal conduct of the defendants.  *Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-111 (1983); *City of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Weinstein v. Bradford*, 423 U.S. 147 (1975).

　　Here, the Complaint does not allege that Plaintiffs suffered any injury as a result of the Department of Corrections policy that was to go into effect June 24, 2002.  It alleges only that they would suffer injury in the future when that policy went into effect.  However, that policy has never gone into effect.  A policy on inmate mail did go into effect on September 30, 2002, and it is similar in many ways

---

[3] In their initial Motion to Dismiss the Complaint, defendants argue that Plaintiffs state no case or controversy because they do not allege any underlying non-frivolous claims that are in imminent danger of injury.  This remains a valid reason to dismiss this action, in addition to the reasons argued in the present Motion.

to the previous draft.  However, it differs in one way of great significance to Plaintiffs' claims.  It now permits attorneys to have their mail unsealed in Plaintiffs' presence simply by obtaining a control number and printing it on the envelope, as opposed to delivering the mail personally to a Department facility.  The Complaint does not challenge this Policy.  The Complaint was filed before this Policy was even issued.

This case cannot realistically go forward under the present Complaint. Plaintiffs have not amended their Complaint to challenge the policy that went into effect September 30, 2002, or more necessarily, the application of that policy to cause actual injury to any non-frivolous legal claims of any of the Plaintiffs.  The Court cannot decide hypothetical cases.  It should dismiss this action, without prejudice.

## II.    EVEN IF THIS ACTION IS NOT MOOT, IT MUST BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

Even if the Court implies an amendment to the Complaint to challenge the DC-ADM 803 effective September 30, 2002, or even if Plaintiffs slip in an amended complaint challenging that Policy, this action still cannot proceed because Plaintiffs have failed to exhaust available administrative remedies for the claims they assert. The Court must still dismiss the action.

Federal law provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

5

42 U.S.C. § 1997e(a).  Exhaustion is a pre-condition to suit.  *Ali Ahmed v.*

*Dragovich*, 297 F.3d 201, 209, n. 9 (3d Cir. 2002).  While it is an affirmative defense,

it may be raised on motion and considered on affidavits.  *Ray v. Kertes*, 285 F.3d

287, 295, n. 8 (3d Cir. 2002); Fed.R.Civ.P. 12(b)(6), 43(e).

Plaintiffs' claims focus on the Department of Corrections policies on mail sent

to them by attorneys and courts.  These policies are now stated in DC-ADM 803,

effective September 30, 2002.  These are claims with respect to prison conditions as

defined by § 1997e(a).  "Civil action with respect to prison conditions" is defined as:

> any civil proceeding arising under Federal law with
> respect to the conditions of confinement or the effects of
> government officials on the lives of persons confined in
> prison, but does not include habeas corpus proceedings
> challenging the fact or duration of confinement in prison.

18 U.S.C. § 3626(g)(2).  In *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000), *affd.* 532

U.S. 731 (2001), the court said that "conditions of confinement" complaints include

those regarding "incomplete law libraries," which is an access to courts claim

similar to Plaintiffs' claim here.  206 F.3d at 294.  The court then said that "the

expansive and somewhat overlapping language Congress employed in § 3626(g)(2)

must be read  — naturally and in its proper context — to encompass all prisoner

petitions."  206 F.3d at 295.  It rejected any attempt to separate conditions of

confinement and use of force claims, holding that Congress defined "actions with

respect to prison conditions" expansively.  206 F.3d at 297.  The Supreme Court has

also recently held that excessive force claims are actions with respect to prison

conditions. *Porter v. Nussle*, 122 S.Ct. 983 (Feb. 26, 2002). If they are, claims regarding inmate receipt of mail are too.

Plaintiffs are prisoners confined in state correctional facilities.

The Department of Corrections has a grievance procedure, which is an available administrative remedy. DC-ADM 804, attached. The procedure permits an inmate to submit a written grievance regarding any problem or issue of concern arising during the course of confinement. DC-ADM 804 §§ IV.I, V. It requires relevant staff to respond to the grievance in writing and take or recommend action to resolve it. DC-ADM 804 § VI.B. It permits the inmate to appeal to the manager of the institution if dissatisfied with the initial response. DC-ADM 804 § VI.C. If the inmate is dissatisfied with the institution manager's response, he may appeal to the Department's Office of Grievances and Appeals. DC-ADM 804 § VI.D. Surely, Plaintiffs can use the Department of Corrections grievance procedure to ask the Department to change or interpret its policy regarding mail from attorneys and courts, and the Department could grant the relief requested. Even if the grievance procedure does not provide for the same relief as is available in a federal lawsuit, the procedure remains an available administrative remedy that must be pursued to conclusion before filing in federal court. *Booth v. Churner*, 532 U.S. 731 (2001) (requiring exhaustion of the Pennsylvania Department of Corrections procedure).

To exhaust administrative remedies, a prisoner must pursue his claim to the highest level of the administrative process before filing suit. *Ali Ahmed v. Dragovich*, 297 F.3d at 209; *Booth v. Churner*, 206 F.3d at 292, 293, 299; *Freeman*

7

*v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). Such an appeal is particularly important here where Plaintiffs question a Department policy. If the inmate has not appealed to the highest level, the court must dismiss the suit.

Here, none of the Plaintiffs have taken a grievance regarding current DC-ADM 803 or its application to the highest level of the grievance process. Until they do, they cannot institute an action in federal court regarding that Policy or its application. The Court must dismiss this action, without prejudice to Plaintiffs' right to re-file after they have exhausted. *Ali Ahmed v. Dragovich*, 297 F.3d at 209.

## CONCLUSION

The Court should dismiss this action, either because it is moot or because Plaintiffs have not exhausted their administrative remedies.

D. MICHAEL FISHER
ATTORNEY GENERAL


BY:  s/ John O. J. Shellenberger
      John O.J. Shellenberger
      Chief Deputy Attorney General
      Identification No. 09714

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA  19107-3603
Telephone:  (215) 560-2940
Fax:   (215) 560-1031

## <u>CERTIFICATE OF SERVICE</u>

I, John O. J. Shellenberger, hereby certify that the foregoing Defendants'
Motion to Dismiss the Amended Complaint has been filed electronically and is
available for viewing and downloading from the ECF system.  I further certify that
true and correct copies of the foregoing Defendants' Motion to Dismiss the Amended
Complaint were mailed on February 14, 2003 by first class mail, postage prepaid,
to:

> Derrick Dale Fontroy, AY-7513;
> Theodore B. Savage, CB-2674;
> Aaron Christopher Wheeler, BZ-2590
> State Correctional Institution
>  at Graterford
> P.O. Box 244
> Graterford, PA 19426-0244
>
> James S. Pavlichko, DK-0199
> State Correctional Institution
>  at Mahanoy
> 301 Morea Rd.
> Frackville, PA 17932

> D. MICHAEL FISHER
> ATTORNEY GENERAL


> BY:   s/ John O. J. Shellenberger
>       John O.J. Shellenberger
>       Chief Deputy Attorney General
>       Identification No. 09714

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA  19107-3603
Telephone:  (215) 560-2940
Fax:   (215) 560-1031