IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK DALE FONTROY, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| GOVERNOR MARK SCHWEIKER, et al., | : | |
| Defendants | : | NO. 02-2949 |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' DECLARATION
REGARDING MOTION TO DISMISS THE AMENDED COMPLAINT**

**STATEMENT OF THE CASE**

By Order dated May 1, 2003, the Court directed plaintiffs to file a declaration stating (a) how the Pennsylvania Department of Corrections Inmate Mail and Incoming Publications Policy, DC-ADM 803, implemented on September 30, 2002, is unconstitutional; and (b) how they have been aggrieved by this policy. The Court also directed defendants to file a response to the plaintiffs' declaration, including a recitation of all changes to the policy regarding inmate mail that have been implemented since this action was filed. Plaintiffs have filed a declaration. This is Defendants' response.

Plaintiffs, four inmates under the custody of the Pennsylvania Department of Corrections, filed the Complaint on May 16, 2002. It requested that the Court declare unconstitutional portions of a proposed Pennsylvania Department of Corrections policy regarding mail sent to inmates by attorneys and courts. The challenged policy was to go into effect on June 24, 2002, and a copy of it was

attached to the Complaint.  It provided that, in general, each State correctional facility's mailroom staff would open all incoming inmate mail in a mailroom, inspect it for contraband, then have it delivered to the inmate addressee.  Staff were not to read the mail.  The proposed policy provided a different procedure for what it defined as "incoming sealed or privileged correspondence."  This was material that had been hand delivered by an attorney to a Department of Corrections facility and searched in the presence of the person making the delivery.  After the search, this mail was to be sealed, delivered to the inmate sealed, and unsealed and inspected again only in the inmate's presence.

The Complaint claimed that Department of Corrections staff would violate the Constitution if they opened any mail sent to Plaintiffs by attorneys or courts outside Plaintiffs' presence.  Defendants moved to dismiss the Complaint for failure to state a case or controversy and failure to state a claim upon which relief might be granted.

The policy challenged by the original Complaint did not go into effect on June 24, 2002.  *See* Declaration of Michael A. Farnan, copy attached.  Attorneys from the American Civil Liberties Union, the Pennsylvania Institutional Law Project, and the Defender Association of Philadelphia negotiated an addition to the proposed policy.  *See* Second Declaration of Michael A. Farnan, copy attached.  The negotiated addition expanded the definition of "incoming privileged correspondence" to include correspondence marked with an "attorney control number."  The Department of Corrections issued a revised inmate mail policy incorporating the

2

addition, and it went into effect on September 30, 2002 (titled Inmate Mail and Incoming Publications Policy, DC-ADM 803).[1]

On January 29, 2003, with the Motion to Dismiss still pending, Plaintiffs filed an Amended Complaint alleging that the Department of Corrections had implemented a new inmate mail policy effective September 30, 2002. The Amended Complaint includes a copy of the September 30, 2002 policy as its Exhibit A (this policy can also be seen at www.cor.state.pa.us/policy.html). Although the policy includes under "incoming privileged correspondence" mail marked with an attorney control number, the Amended Complaint still asks the Court to declare the policy's provisions on mail from attorneys, courts, and, now, elected officials unconstitutional on their face. The Amended Complaint claims that the policy permits Department of Corrections staff to open mail sent to Plaintiffs by attorneys, courts, or elected officials outside Plaintiffs' presence, and that these openings violate Plaintiffs' constitutional rights. Defendants have moved to dismiss the Amended Complaint for failure to state a case or controversy, failure to state a claim upon which relief may be granted, and failure to exhaust administrative remedies.

Specifically, the DC-ADM 803 referenced in the Amended Complaint provides that a licensed attorney may obtain an attorney control number from the

---

[1] The attorney control number procedure, as well as changes from the pre-existing policy on mail, were outlined in the Memorandum to All Inmates from Secretary of Corrections Jeffrey A. Beard dated September 1, 2002, a copy of which is appended to the Second Declaration of Michael A. Farnan.

3

Department of Corrections.  Section VI.B.2.b.  If the attorney places that control number on envelopes mailed through the Postal Service to an inmate, that mail will be considered "incoming privileged correspondence" and will be unsealed and inspected only in the presence of the inmate.  Section VI.B.2.b.  Otherwise, the DC-ADM 803, effective September 30, 2002, is the same as the policy that was to go into effect in June 2002.  That is, as is relevant here, each correctional facility's mailroom staff unseals all incoming inmate mail in a mailroom, inspects it for contraband, then has it delivered to the inmate addressee, unless the mail meets the definition of "incoming privileged correspondence," in which case it is unsealed and inspected only in the inmate's presence.

## ARGUMENT

### DC-ADM 803's PROVISIONS FOR MAIL SENT TO INMATES BY ATTORNEYS, COURTS, AND OTHER ELECTED OFFICIALS DO NOT VIOLATE INMATES' CONSTITUTIONAL RIGHTS.

In their Declaration, Plaintiffs disavow an access to courts claim.  At any rate, the Amended Complaint states no access to courts claim because it alleges no actual injury to any non-frivolous underlying claim.  *Lewis v. Casey*, 518 U.S. 343 (1996); *Christopher v. Harbury*,  112 S.Ct. 2179, 2186-88 (2002).  Plaintiffs now claim only that the Department of Corrections policy on mail sent to them by attorneys, courts, and elected officials violates a right to privacy protected by the Fourteenth Amendment and speech rights protected by the First Amendment.  However, the current policy violates neither such right.  It guarantees and protects

substantial First Amendment activity and inmate privacy.  It does not significantly limit true constitutional rights, and the minimal regulations are valid on their face.

Convicted inmates appear to retain some interest protected by the Fourteenth Amendment in avoiding disclosure of highly personal information.  *Doe v. Delie,* 257 F.3d 309, 317 (3d Cir. 2001).  To receive protection, the information must be confidential information of the kind that, if known to others, would seriously stigmatize the inmate or endanger him.  For example, *Doe* held that an inmate had a protected privacy interest in information in his medical records that he had tested positive for HIV.

Mail sent to inmates by courts, other elected officials, and even attorneys is not likely to contain otherwise undisclosed highly personal information likely to stigmatize or endanger the recipient inmate.  Certainly, mail sent to inmates by courts will never contain such information.  Any documents sent by courts are publicly available.  They are either forms or instructions or case specific documents filed on the public record.  Case filings are sent to other parties in the particular case.  Courts do not correspond privately with litigants.  Both the Seventh and Ninth Circuits have held that mail sent from courts to inmates has no privileged status.  *Martin v. Brewer,* 830 F.2d 76, 78 (7th Cir. 1987); *Keenan v. Hall,* 83 F.3d 1083 (9th Cir. 1996).  Similarly, mail from elected officials other than courts will not likely contain highly personal information about the inmate.  *See O'Keefe v. Van Boening,* 82 F.3d 322 (9th Cir. 1996) (prison officials may open and read grievances sent by inmates to some state agencies and officials); *Mann v. Adams,* 846 F.2d 589

(9th Cir. 1988) (inmate need not be present when prison officials open mail from public agencies, public officials, civil rights groups). Elected officials with many constituents rarely know anything highly personal about an inmate, and they write in generalities. *See Martin v. Brewer,* 830 F.2d at 78 ("...much institutional mail is 'junk mail' — not a personal communication"). Mail from prosecutors and attorneys representing parties adverse to the inmate contains no undisclosed highly personal information about the inmate. The prosecutor or attorney and the attorney's clients already know the information. Even mail from an inmate's own attorney will not often contain highly personal information not otherwise known. Often, an attorney's mail does nothing more than inform the inmate of events in his case that are already public and known to the inmate's legal adversaries. Even if the information is personal, it will not likely stigmatize or endanger the inmate. The inmate's confinement in a state correctional institution already shows that he has been convicted of a serious crime. And, no written information can stigmatize unless someone reads the writing.

Convicts retain some First Amendment rights too, but their First Amendment rights hardly encompass the privileges Plaintiffs claim here. The First Amendment protects freedom of speech. At its core, it protects public speech on matters of public concern. *Bartnicki v. Vopper*, 532 U.S. 514, 533, 534 (2001); *Crawford-El v. Britton*, 523 U.S. 574, 592, 593 (1998); *Connick v. Myers*, 461 U.S. 138, 143-146 (1983). Necessarily, protected speech is well publicized. The First Amendment does not fit an attempt to keep personal information hidden.

Furthermore, incoming correspondence is not the speech of the recipient inmate.  In *Wolff v. McDonnell*, 418 U.S. 539, 575, 576 (1974), the Court specifically stated that it had not recognized a First Amendment right of prisoners to receive correspondence.

The allegations of injury asserted in Plaintiffs' Declaration use the term "legal mail," which is meaningless.  Plaintiffs do not allege that any mail from attorneys representing them has been opened outside their presence, much less read by anyone.  They do not allege that any otherwise undisclosed highly personal, stigmatizing, damaging information from attorneys, courts, or other elected officials has been read by anyone.  They do not allege that the temporary misdelivery of a few pieces of mail has caused them any real harm.  They do not allege where alleged missing pages became missing.  They do not allege that any staff inspection or misdelivery of their incoming mail has caused them to limit their assertion of complaints about the prison system.  Most of the mail they claim others may have seen was mail from the courts or the attorney for the prison officials in this case, none of which falls within the inmates' speech or privacy rights.

Even where convicts have First Amendment or Fourteenth Amendment privacy rights, prison officials have a countervailing broad right to restrain and regulate the inmates' rights.  A regulation is valid if it is reasonably related to legitimate penological interests.  *Shaw v. Murphy*, 532 U.S. 223 (2001); *Thornburgh v. Abbott,* 490 U.S. 401 (1989); *Doe v. Delie,* 257 F.3d at 317.  Several factors are relevant, the first being the most important: (1) whether the regulation rationally

serves a penologically legitimate interest; (2) whether the regulation leaves inmates alternative means of exercising the right, expansively defined; (3) whether accomodation of the particular right asserted by the complaining inmates would impose significant costs on other inmates or prison staff or prison resources generally; (4) whether the prison could fully accommodate the right the inmates assert through readily available alternative means at minimal cost to the prison's interests. *Id.* The courts have regularly held that prison officials have legitimate interests in maintaining security of their institutions, safety of staff and inmates, and efficiency of operations. *Thornburgh v. Abbott,* 490 U.S. at 415; *Fraise v. Terhune,* 283 F.3d 506, 516 (3d Cir. 2002); *DeHart v. Horn,* 227 F.3d 47, 52, 53 (3d Cir. 2000). They have regularly held that prompt and safe inspection of mail sent to inmates serves these interests. *Thornburgh v. Abbott,* 490 U.S. at 415, 416; *Wolff v. McDonnell*, 418 U.S. 539, 575-577 (1974); *Brewer v. Wilkenson,* 3 F.3d 816, 824, 825 (5th Cir. 1993); *see also Altizer v. Deeds,* 191 F.3d 540, 547-549 (4th Cir. 1999) (security needs justify opening and inspection of outgoing inmate mail). "Prison officials are to remain the primary arbiters of the problems that arise in prison management." *Shaw v. Murphy,* 532 U.S. at 230.

The current DC-ADM 803 that Plaintiffs challenge does not adversely impact any First Amendment or privacy rights Plaintiffs may have in the mail. At least, the DC-ADM 803 is a legitimate regulation of those rights.

The DC-ADM 803 policy permits inmates to send and receive mail in unlimited quantities to and from unlimited correspondents. Sec. VI.A.1, 2, 5. It

even gives each inmate ten free first class letters per month.  Sec. VI.A.4.  Indigent inmates can receive advances for postage to mail legal documents to the courts, attorneys, and parties to litigation.  Sec. VI.C.2.

Although the Amended Complaint complains about incoming mail sent to inmates, Plaintiffs' Declaration references their outgoing mail, and many of the cases they cite deal with outgoing mail sent by inmates to attorneys and courts. *Proudfoot v. Williams,* 803 F.Supp. 1048 (E.D.Pa. 1992); *Young v. Keohane,* 809 F.Supp. 1185 (M.D.Pa. 1992); *Chinchello v. Fenton,* 763 F.Supp. 793 (M.D.Pa. 1991).  Similarly, *Williams v. Price,* 25 F.Supp. 2d 623 (W.D.Pa. 1997) dealt with confidentiality of attorney-inmate verbal discussions in a prison visiting area where the conversations could be heard by others.  The current DC-ADM 803 strictly protects outgoing inmate mail.  It provides that inmates will place their sealed outgoing mail in mailboxes and no one will open any of that mail, unless staff have reason to believe that the mail will impair the security of the facility.  Sec. VI.A.7, 10; Sec. VI.E.1.  If the mail is to an attorney, court, or certain government officials, staff may not open it unless they have reason to believe that the correspondence will reveal planned or future criminal activity and they obtain written permission from the Secretary of Corrections or his designee.  Sec. IV.N.1; Sec. VI.D.2.  Courts have held that prison staff may, constitutionally, open, inspect, and even read outgoing inmate mail under circumstances less stringent than those required by DC-ADM 803.  *Duamuteff v. Hollins,* 297 F.3d 108 (2nd Cir. 2002); *Altizer v. Deeds,*

191 F.3d 540, 547-549 (4th Cir. 1999); *Gassler v. Wood,* 14 F.3d 406 (8th Cir. 1994);

*Bryan v. Werner,* 516 F.2d 233, 239 (3d Cir. 1975).

More relevant here, DC-ADM 803 fully protects incoming mail sent to

inmates by attorneys, courts, and other elected officials.  The policy requires staff to

open and inspect all incoming non-privileged mail in a mailroom.  Sec. VI.D.1; Sec.

VI.E.2.f.; Sec. VI.E.3.  However, the staff inspection is only for contraband items.

The policy does not authorize staff to read the mail, except upon written order of the

Facility Manager (the Superintendent) when he has reason to believe that the

security of the institution may be threatened, that the inmate is violating the DC-

ADM 803 itself, or the mail will reveal criminal activity or violations of other prison

rules.  Sec. VI.D.1.c.  The Supreme Court and federal appellate courts have held

that opening and inspection without reading of mail from attorneys and courts does

not violate the recipient inmate's constitutional rights, whether or not the inmate is

present when the mail is opened.  *Wolff v. McDonnell* 418 U.S. at 576

(1974)("freedom from censorship is not freedom from inspection or perusal"); *Brewer*

*v. Wilkenson,* 3 F.3d 816, 825 (5th Cir. 1993); *U.S. v. Stotts,* 925 F.2d 83, 88 (4th Cir.

1991).  Realistically, prison staff could not possibly read all of the mail sent to

inmates.  The State Correctional Institution at Graterford, where three of the

plaintiffs currently reside, houses over 3,000 inmates.  *See* Monthly Institution

Profile, www.cor.state.pa.us/info.html.

Although probably unnecessary, DC-ADM 803 provides extra assurances for

mail from attorneys if the mail is "incoming privileged correspondence."  Staff must

open and inspect this mail too, but must do it in the presence of the receiving inmate so that the inmate can actually see that staff is not reading his mail. Sec. VI.B. Incoming mail is "privileged correspondence" if it has been hand delivered by an attorney to a Department of Corrections facility or if it bears an attorney control number. Sec. VI.B. Any licensed attorney can obtain a control number at any time by simple request. Sec. VI.B.2.b.2. The control number applies to all mail sent by that attorney to any inmate in the State prisons. Sec. VI.B.2.b.3. To get a control number, the attorney does not have to identify a particular case or particular inmate and an inmate does not have to identify the attorney. Attorneys who regularly represent inmates and inmate interests have accepted the control number procedure. Second Declaration of Michael A. Farnan. The ease with which an attorney can get a control number distinguishes the DC-ADM 803 from the policy involved in *Knop v. Johnson,* 977 F.2d 996 (6th Cir. 1992), cited by Plaintiffs, where only mail from attorneys specified by the inmate received preferred treatment.[2] The Supreme Court approved a procedure more difficult for attorneys than the control number procedure of DC-ADM 803 when it said that prison officials could "require that a lawyer desiring to correspond with a prisoner, *first* identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar." *Wolff* 418 U.S. at 576, 577. Other courts have upheld various detailed identification requirements imposed on attorneys to get

---

[2] *Knop* was an access to courts case and was largely overruled by *Hadix v. Johnson,* 182 F.3d 400 (6th Cir. 1999).

special treatment for their mail to inmates. *Martin v. Brewer,* 830 F.2d 76 (7th Cir. 1987); *U.S. v. Stotts,* 925 F.2d 83 (4th Cir. 1991); *Henthorn v. Swinson,* 955 F.2d 351 (5th Cir. 1992).

Anyone's mail may get misdirected many places between sender and recipient. Misdirection does not by itself implicate privacy or First Amendment rights. At any rate, DC-ADM 803 adequately protects inmate mail once in the prison. The mail must be delivered to the inmate within twenty-four hours after receipt. Sec. VI.E.2.f. The Third Circuit has approved a system where inmates delivered mail to other inmates, even though the delivering inmates sometimes delayed the mail. *Bryan v. Werner,* 516 F.2d 233, 238 (3d Cir. 1975). The inconsequential misdeliveries Plaintiffs allege do not put the DC-ADM 803 in violation of inmate privacy or First Amendment rights. An inmate and his attorney can further reduce the possibility of in-prison misdelivery through the simple control number procedure.

Plaintiffs rely heavily on *Bieregu v. Reno,* 59 F.3d 1445 (3d Cir. 1995). However, the Third Circuit, in *Oliver v. Fauver,* 118 F.3d 175 (3d Cir. 1997), overruled *Bieregu* without reservation. At any rate, in *Bieregu* the plaintiff inmate had alleged that federal prison staff had repeatedly read his incoming mail in violation of federal regulations. Here, Plaintiffs challenge the State policy itself, and that policy does not authorize staff to read any incoming inmate mail, absent compelling circumstances and high level approval.

Even if the DC-ADM 803 incoming mail procedures adversely impact inmate privacy or First Amendment rights, they are reasonably related to legitimate penological interests. Opening and inspecting mail coming into the prison for inmates is rationally related to protecting security and safety. The mail may bring in drugs, escape tools, money, explosives, chemicals, and other dangerous items, some of which may present dangers as the mail is opened. These items should be removed before they ever get near inmates. *See U.S. v. Stotts,* 925 F.2d 83, 87 (4th Cir. 1991). Opening and inspection in a separate mail area by staff who concentrate only on that task is rationally related to security, safety, and efficiency. In a separate area, the process can be done more safely and thoroughly with protective equipment if needed. There, the process will expend less personnel time (which means less money) than in the inmate housing areas. Opening mail in front of the inmate in or near a housing area will be less safe, less thorough, and more staff time consuming. If incoming mail is to be opened in front of the inmate, the prison should be certain that this treatment is truly justified. Reserving this treatment for licensed attorneys who have been given control numbers that they affix to the mail is rationally related to this objective because the control number clearly and quickly assures staff that the sender is really an attorney and because it limits the amount of mail given the special treatment to that for which the need is the most legitimate. *See U.S. v. Stotts,* 925 F.2d at 87.

Inmates have easy alternatives to protect true privacy and First Amendment rights in mail from attorneys and courts. They can accept the regular mail, as they

do for highly personal mail from family and friends.  For added assurance that staff don't read the mail, they can ask their attorneys to obtain attorney control numbers, if the attorneys don't already have them.

Plaintiffs demand that the inmate be present when staff opens all mail that appears in some undefined way to be from an attorney or court or elected official. Amended Complaint, "Wherefore Clause" (a), (b).  This would impose high costs on the prison officials in terms of reduced security and increased staff time.  *See O'Keefe v. Van Boenning,* 82 F.3d at 326, 327; *U.S. v. Stotts,* 925 F.2d at 89.  More dangerous items would slip into inmate hands, staff and other inmates would be placed at risk from substances emanating as envelopes are opened, staff will have to expend more time processing the mail.

In summary, neither privacy nor First Amendment rights protect the confidentiality of mail sent to Plaintiffs from courts, elected officials, and, generally, from attorneys.  However, DC-ADM 803 protects confidentiality of this mail.  It does not permit staff to read the mail.  It provides inmates and their attorneys with a simple procedure, approved by prisoners' rights attorneys, to satisfy themselves that staff are not reading mail from the attorneys and to reduce further the tiny possibility that other persons will read and become inflamed by the mailed items.  If DC-ADM 803 adversely affects any inmate First Amendment or privacy rights, the regulations producing this effect are reasonably related to legitimate penologic interests.

14

## CONCLUSION

The Court should dismiss this action for failure to state a claim upon which relief may be granted.

D. MICHAEL FISHER
ATTORNEY GENERAL

BY:   s/ John O. J. Shellenberger
John O.J. Shellenberger
Chief Deputy Attorney General
Identification No. 09714

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA  19107-3603
Telephone:  (215) 560-2940
Fax:   (215) 560-1031

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DERRICK DALE FONTROY, et al.,          :          CIVIL ACTION

                     Plaintiffs          :

           v.          :

GOVERNOR MARK SCHWEIKER,          :
et al.,

               Defendants          :          NO.    02-CV-2949

## DECLARATION OF MICHAEL A. FARNAN

Michael A. Farnan hereby declares under penalty of perjury that the following facts are true and correct:

1.     I am Chief Counsel to the Pennsylvania Department of Corrections.

2.     The Secretary of Corrections has delayed the implementation of the new DC-ADM 803 "Inmate Mail and Incoming Publications" that was to go into effect June 24, 2002.  The attached notice to inmates has been sent to all correctional facilities for posting on all bulletin boards.

I declare under penalty of perjury that the foregoing facts are true and correct.

Date: _June 25, 2002_

                                                        _Micheal A. Farnan_
                                                          Micheal A. Farnan

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**Secretary's Office**
(717) 975-4860
June 21, 2002

Subject:    Delay in Implementing the New **DC-ADM 803, "Inmate Mail and Incoming Publications"** Policy

To:    All Inmates

From:    *Jeffery A. Beard*
Jeffery A. Beard, Ph.D.
Secretary

Please be advised that the implementation of the new **DC-ADM 803, "Inmate Mail and Incoming Publication"** policy that is to go into effect June 24, 2002, has been delayed. Therefore the current **DC-ADM 803** policy that has been in effect since January 22, 2001, will remain in effect.

You will be receiving a notice when the new **DC-ADM 803** will be effective. Any questions you may have about this policy should be directed to your Unit Manager or Officer-in-Charge of your housing unit.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK DALE FONTROY, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| GOVERNOR MARK SCHWEIKER, et al., | : | |
| Defendants | : | NO.   02-CV-2949 |

## SECOND DECLARATION OF MICHAEL A. FARNAN

Michael A. Farnan hereby declares under penalty of perjury that the following facts are true and correct:

1.    I am Chief Counsel to the Pennsylvania Department of Corrections.  I held the same position in 2002.

2.    In June 2002, I, on behalf of the Department, engaged in negotiations with attorneys representing the American Civil Liberties Union, the Pennsylvania Institutional Law Project, and the Defender Association of Philadelphia regarding the Department's revisions to its policies on mail sent to inmates by attorneys. Those negotiations are recorded in letters, copies of which are attached as follows:

   a.    Letter dated June 6, 2002 from me to Stefan Presser, Esquire;

   b.    Letter dated June 25, 2002 from Mr. Presser to me;

   c.    Letter dated June 28, 2002 from me to Mr. Presser.

3.     When the revised policy, DC-ADM 803, was issued on September 1, 2002, the Secretary of Corrections sent a memo to all inmates explaining the changes made in it.  A copy of that memo is also attached.

I declare under penalty of perjury that the foregoing facts are true and correct.

Date: *May 13, 2003*

*Michael J. Farnan*
Michael A. Farnan



**PENNSYLVANIA DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PENNSYLVANIA 17001-0598**
**(717) 975-4859**

**VIA FACSIMILE 215-592-1343**

June 6, 2002

Stefan Presser, Esquire
Legal Director
ACLU Foundation of Pennsylvania
P.O. Box 1161
Philadelphia, PA  19105-1161

Dear Mr. Presser:

It was a pleasure meeting with you in your offices in Philadelphia on June 4, 2002 to discuss the Department's plans to implement a new mail policy consistent with its recently passed regulations. As I explained, this change in policy has been a public process conducted over a long period of time. It involved promulgation of amended regulations pursuant to the Regulatory Review Act and the Commonwealth Documents Law.

The regulations were proposed by the Department to address a serious security concern about contraband coming into the institutions through legal mail. Because legal mail is opened and searched for the first time on the housing unit in the presence of the inmate, there have been many attempts over the years to use legal mail as a vehicle to introduce contraband, including drugs and implements of escape, into Department facilities. Because the Department had no way of ensuring that mail was actually coming from an attorney, it developed a procedure in the regulation to address this problem.

The Office of General Counsel, Office of the Budget and Governor's Policy Office initially reviewed the regulations. The regulations were then reviewed by the Office of Attorney General prior to submission to the Independent Regulatory Review Commission and the House and Senate Judiciary Committees. Notice of the proposed rule making and thirty-day public comment period was published on May 12, 2001 in the Pennsylvania Bulletin along with a copy of the proposed regulations.

After the public comment period expired, and initial approval was obtained from the House and Senate Judicial Committees, the Independent Regulatory Review Commission commented on the regulations and their comments were published on its website. The Department revised the regulations in response to those comments and the final form regulations were again submitted to executive offices and then to the House and Senate Judiciary Committees. Upon approval by those committees, the regulations were approved at a televised public meeting of the Independent Regulatory Review Commission on November 15, 2001. The regulations were then sent to the Attorney General's Office where they were again approved. They became effective upon publication in the Pennsylvania Bulletin on December 22, 2001.

Once the regulations became effective, the Department acted cautiously to ensure that no privileges and rights would be inadvertently compromised. The Department carefully developed a new mail policy, which was issued on March 25, 2002 with an effective date of June 24, 2002. The ninety-day period between the date of issue and the effective date was intended to allow inmates and their attorneys to become familiar with the new procedures before they were implemented. To further assist inmates in notifying their attorneys of the changes, a memorandum was provided to inmates that they could send to their attorneys to inform them of the new policy. The memorandum included information about where the Department's regulations and new policy could be found. The new policy was posted on the Department's website.

The policy provides that an attorney who is unable to comply with it may seek advance permission to have correspondence delivered in some other manner. The policy requires that the request be in writing and explain why compliance with the policy is not possible. It asks that an alternative means of delivery be proposed. If no alternative means is proposed, it states that the Department will provide an alternative for the attorney. As I pointed out during the meeting, your organization requested a waiver but had not proposed an alternative.

During our meeting the Department presented a proposal for the use of control numbers to identify correspondence as actually coming from an attorney. This procedure would involve an attorney seeking a control number via facsimile from the Department for use on correspondence. If the control number were verified, the mail would be opened in the presence of the inmate.

When this proposal which was discussed among the persons present, including representatives of the Pennsylvania Institutional Law Project and the Defender Association of Philadelphia, it was suggested that a control number be assigned to an attorney rather than to a piece of correspondence. The procedure would be as follows: an attorney seeking to send privileged mail to the Department of Corrections, without first complying with the Department's new policy, would send a facsimile to the Department's central office seeking a waiver from the policy that included their name, address, telephone and facsimile numbers as well as their state attorney identification number. The Department would then provide the attorney with a control number that would be applicable to all mail sent from that attorney to Department of Corrections inmates.

The control number would be a random number that must not be disclosed to inmates. Attorneys would put the control number on all attorney-client privileged correspondence to a Department of Corrections inmate. The attorney would also place a sticker or a stamp over the seal on the envelope that would contain a signed statement under penalty of perjury that the envelope contains only materials that qualify for the attorney-client privilege and are not contraband.

When an institution receives an envelope bearing the control number and the above statement, the control number would be verified and then redacted or otherwise obliterated from the envelope before it is opened in the presence of, and given to, the inmate. If the control number does not appear on the envelope, the mail will be treated as regular mail and opened in the mailroom.

The attorney may use the control number assigned by the Department until any problem arises or the Department determines that new numbers should be issued for security reasons. The attorney will be notified in either event.

4

This proposal has been communicated to my client and it is acceptable to the Department. I look forward to hearing from you on or before June 11, 2002 to know if this proposal is also acceptable to your client. If we can come to an agreement on this compromise, the Department will consider extending the period for implementation of the new policy, if necessary, to provide adequate notice to all parties including inmates.

Thank you for your willingness to discuss this matter and to attempt to reach a compromise.

Very truly yours,

Michael A. Farnan
Chief Counsel

MAF/JCF/cep
cc: File



ACLU Foundation of Pennsylvania
P.O. Box 1161
Philadelphia, PA 19105-1161
(215) 592-1513
*fax:* (215) 592-1343
info@aclupa.org

James D. Crawford
*President*

**By E-Mail and First Class**

Larry Frankel
*Executive Director*

Stefan Presser
*Legal Director*
*spresser@aclupa.org*
*ext. 116*

June 25, 2002

Michael Farnan, Esq.
Pennsylvania Department of Corrections
P.O. Box 598
Camp Hill, PA 17001-0598

Dear Michael:

I write to memorialize our agreement concerning DC-ADM 803 governing attorney-client mail, which agreement, if fully implemented, will obviate the need for litigation on the part of this office to protect our clients' constitutional rights. The elements of this agreement are set forth below:

1.      Beginning immediately, the Department will provide a control number to any and all lawyers who insist that their correspondence be opened only in the presence of their inmate clients.

2.      The control number will be issued by the Legal Department of the DOC. Lawyers applying for control numbers may do so via a fax designated by the DOC. The fax number shall be made public.

3.      To secure a control number, a lawyer will furnish his/her Pennsylvania Bar Number (individuals not admitted to practice in Pennsylvania shall supply satisfactory proof of their licensure).

4.      Lawyers will attest upon securing the control number that neither they nor any member of their staff will transmit contraband, and that all correspondence will be in furtherance of "essential, confidential, attorney-client communication."

5.      After making the requisite attestations listed in the above paragraph, the control number which is issued may be used by the lawyer for all future communications with any client who is then or may in the future be held by the DOC.

6.      Legal organizations such as the Defender Association of Philadelphia, the Institutional Law Project, the Lewisburg Prison Project (or any other entity with multiple lawyers servicing DOC inmates) shall be provided a single control number which may be

Michael Farnan
June 25, 2002
Page 2

used by all employees of these organizations.

7.    The control number shall be issued within 24 hours of the DOC's receipt of the request and requisite attestations.

8.    Counsel receiving control numbers will inform their staff of the attestation obligations which are set forth in ¶ 4 above.

9.    Control number shall be prominently displayed on all future communication with DOC inmates.

10.    The number, however, is not to be provided to any DOC inmate, and will in fact be excised on receipt of legal correspondence by the DOC before delivery to the inmate.

11.    The DOC. will not delay delivery of mail containing control numbers.

12.    Mail displaying control numbers shall not be opened by DOC personnel unless the inmate recipient is present.

13.    Upon opening, DOC personnel are only to ensure that contraband has not been transmitted; in so doing, DOC personnel may not read any of the correspondence.

14.    The DOC will, no later than the fall of 2002, undertake the steps required of Pennsylvania's Regulatory Review Act so as to further amend DC-ADM 803 to incorporate the requirements set forth above in ¶¶ 1 through 13.

15.    In the interim, the Department will promptly provide a written copy to all inmates of the process outlined in ¶¶ 1 through 13 of this letter. Inmates are to be encouraged by the DOC to transmit these instructions to their lawyers.

16.    The Department will delay implementation of DC-ADM 803's provisions regarding legal correspondence until August 22, 2002, to afford time for inmates to notify counsel of the process set forth in ¶¶ 1 through 13 of this letter.

17.    Should any institution within the DOC or the DOC Central Office receive correspondence from lawyers seeking exemptions from DC-ADM 803's requirement that legal mail be delivered to DOC facilities in order to be treated confidentially, the DOC will immediately inform counsel of the process outlined in ¶¶ 1 through 13 of this correspondence.

Michael Farnan
June 25, 2002
Page 3

I believe this fully sets forth our agreement.  If you disagree, please let me know immediately.
Otherwise, it is my understanding that you will provide me with drafts both of the information which
will be supplied to the inmate population as well as drafts of the policy which will be submitted for
Regulatory Review.


Sincerely yours,


Stefan Presser



**PENNSYLVANIA DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PENNSYLVANIA 17001-0598**
**(717) 975-4859**

**VIA FACSIMILE 215-592-1343**

June 28, 2002

Stefan Presser, Esquire
Legal Director
ACLU Foundation of Pennsylvania
P.O. Box 1161
Philadelphia, PA 19105-1161

    RE:  DC ADM 803 (Mail Policy)

Dear Mr. Presser:

This is in response to your letter of June 25, 2002, outlining your understanding of the implementation of the Department's mail policy.

While it appears that your letter accurately summarizes the exchange that has occurred between us in the last few weeks, there are a few areas that should be clarified. As I informed you, the Department is working on the details of how the system we have discussed will be implemented. Security and operational concerns require the Department to work out these details internally. At the appropriate time, the Department will inform you of its specific procedures. You will also be provided with a copy of the notice that will be sent to inmates as well as the revised policy. That information will also be posted on the Department's website along with the information about how an attorney may obtain a control number.

You refer to an "attestation" in paragraphs 4 and 5 of your letter. As I stated in my previous correspondence, the Department will require a verification made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities for a control number to be issued.

In paragraph 6 you state that a group of attorneys may use one control number. This is our understanding as well. However, if this occurs, the office must designate one person to be responsible to search all mail to inmates to ensure that it does not contain contraband and that person must sign the verification.

With respect to the regulatory process, the Department will begin the process of amending its regulations no later than fall of 2002. You should be aware, however, that "sine die" will occur in November of this year, which means that the legislative session ends and any regulations that are not fully promulgated will expire. Therefore, the Department will not submit regulations to the legislature until after the sine die, although the Department will start the process well before that time. As far as notice of the proposed regulation, you will receive notice along with the general public as proscribed by law, which will be by publication in the Pennsylvania Bulletin. Their website is www.pabulletin.com.

Finally, I regard your letter as your recitation of the discussions we have had to date. I believe it substantially reflects our understanding of those discussions. I do not consider it to be a binding agreement on this or any future administrations. I remain available to discuss this or any other matter with you at any time.

Sincerely,

Michael A. Farnan
Chief Counsel

cc: File

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**Secretary's Office**
(717) 975-4860
September 1, 2002

Subject:      Reissue of Policy, **DC-ADM 803, "Inmate Mail and Incoming Publications"**

To:           All Inmates

From:         *Jeffrey A. Beard*, Ph.D.
              Secretary

This notice is to inform you that the Department has issued a revised **DC-ADM 803, "Inmate Mail and Incoming Publications"** policy. The following changes have been made to this policy:

1.  **Section IV. Definitions**, was changed by deleting the definition of "Bulk Mail" and adding a definition of "Presorted Standard Mail (A)" as **Subsection M**. The phrase "Bulk Mail" was replaced throughout the document with the phrase "Presorted Standard Mail".

2.  **Section VI.A. Mail Privileges, Subsection 3.j.** was changed to permit receipt of mail that has a mailing label affixed to it.

3.  **Section VI.B. Privileged Correspondence** was changed to provide a second way that your attorney may send mail to you if he or she wishes to have it opened in your presence. The first procedure that may be used by your attorney was explained to you in my memo to you of May 13, 2002. Under that procedure, your attorney must hand-deliver the mail to a DOC facility or Community Corrections Center with the appropriate postage. It will be inspected for contraband by DOC staff in his/her presence, and then marked with a DOC stamp showing that it has been inspected. It will then be sealed and placed in U.S. mail. When it arrives at the facility, it will be opened in your presence and inspected for contraband.

    The revised policy provides an option for your attorney to request an attorney control number from the Department. He or she may do so by sending a letter by facsimile addressed to Attorney Control Number Request to 717-975-2217. The facsimile must include the attorney's name, address, telephone and facsimile numbers as well as his/her state attorney identification number. The Department will provide the attorney with a control number that would be applicable to all mail sent from that attorney to Department of Corrections inmates.

    The attorney must place the control number on each envelope mailed to you for the mail to be opened in your presence. The attorney control number is a confidential number that will not be given to you. To keep this number confidential, the mail room staff will cross-out the number with a permanent marker or other method prior to the envelope being sent to the your housing location for delivery to you.

    If your attorney is part of an office with other attorneys, one number may be assigned to the whole office. If this occurs the office must designate one person to be responsible to check all mail to be sent you for contraband and to be sure that it only contains essential, confidential, attorney-client communication. This person must sign a statement, subject to the penalties of **18 Pa. C.S. §4904** relating to unsworn falsification to authorities, that all mail sent to you with

*Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims.*

Reissue of Policy, **DC-ADM 803, "Inmate Mail and Incoming Publications"**
Page 2

the control number on it contains only essential, confidential, attorney-client communication and contains no contraband.

If your attorney follows the above procedure, mail sent to you will be opened in your presence. If a control number does not appear on the envelope, the mail will be treated as regular mail and opened in the mailroom unless your attorney has followed the first procedure of delivering the mail to an institution or Community Corrections Center to be searched.

If, upon opening the envelope in your presence, the staff member without reading the contents notices that the contents contain absolutely no legal material (e.g., contains only a publication readily available to the public with no handwritten notations from counsel), the staff member will issue the contents to you. The staff member will also be required to complete a written report for submittal to the Shift Commander and the Facility Manager. The Facility Manager/designee shall forward a copy of the staff member's report to the Office of Chie Counsel and the Bureau of Standards, Practices, and Security.

4. **Section VI.E. Handling and Distribution of Mail, Subsection 1.** was changed in that the delivery of mail on Saturdays will be discontinued. This change is necessary to ensure consistency of operations at all facilities.

5. **Section VI.F.** Incoming Publication was revised in that a new **Subsection 1.g.** was added stating, "If a publication contains a free sample item (e.g., lotion, perfume sample, etc.), the Facility Manager/designee shall review the item to determine if it will be permitted into the facility. If it is determined that the item is not to be permitted into the facility, it is to be removed from the publication and the publication is to be delivered to the inmate."

The revised policy **DC-ADM 803** will go into effect on September 30, 2002. This will allow you time to notify your attorney of this information. A copy of the revised policy is available to your attorney on the Department's website at http://www.cor.state.pa.us/policy.html. This policy is available to you on your housing unit and in the library for you to review. You may also "check-out" a copy of the policy from the library as you would a library book. If you want a personal copy, you may purchase one using the copying procedures at the facility. The cost of the copy will be 10 cents per page.

**You are encouraged to notify any attorney who may wish to mail you a confidential letter about this information as soon as possible.** If you need another copy of this memo to send to an attorney, you can inform a staff member on your housing unit. One copy will be provided to you free of charge. If you want additional copies, you should follow the photocopying procedures at your facility.

Any questions you may have about this policy should be directed to the facility's Business Manager, your Unit Manager, or the Officer-in-Charge of your housing unit.

## CERTIFICATE OF SERVICE

I, John O. J. Shellenberger, hereby certify that the foregoing Defendants'

Response to Plaintiffs' Declaration Regarding Motion to Dismiss The Amended

Complaint has been filed electronically and is available for viewing and

downloading from the ECF system.  I further certify that true and correct copies of

the foregoing Defendants' Response to Plaintiffs' Declaration Regarding Motion to

Dismiss The Amended Complaint was mailed on May 29, 2003 by first class mail,

postage prepaid, to:

    Derrick Dale Fontroy, AY-7513;
    Theodore B. Savage, CB-2674;
    Aaron Christopher Wheeler, BZ-2590
    State Correctional Institution
     at Graterford
    P.O. Box 244
    Graterford, PA 19426-0244

    James S. Pavlichko, DK-0199
    State Correctional Institution
     at Mahanoy
    301 Morea Rd.
    Frackville, PA 17932

                            D. MICHAEL FISHER
                            ATTORNEY GENERAL


                    BY:   <u>s/ John O. J. Shellenberger</u>
                            John O.J. Shellenberger
                            Chief Deputy Attorney General
                            Identification No. 09714

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA  19107-3603
Telephone:  (215) 560-2940
Fax:   (215) 560-1031