IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DERRICK DALE FONTROY, et al.,          :          CIVIL ACTION

                Plaintiffs          :

      v.          :

GOVERNOR MARK SCHWEIKER, et al..,      :

                Defendants          :          NO.  02-CV-2949

**DECLARATION OF KATHLEEN ZWIERZYNA**

GERALD J. PAPPERT
Attorney General of Pennsylvania

By:   s/ John O. J. Shellenberger
       ————————————————
       John O. J. Shellenberger
       Chief Deputy Attorney General
       Attorney I.D. No. 09714
       Attorney for Defendants

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Phone: (215) 560-2940
Fax:   (215) 560-1031

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DERRICK DALE FONTROY, et al., : CIVIL ACTION

   Plaintiffs :

  v. :

GOVERNOR MARK SCHWEIKER, et al., :

   Defendants : NO. 02-CV-2949

## DECLARATION OF KATHLEEN ZWIERZYNA

Kathleen Zwierzyna hereby declares under penalty of perjury that the following facts are true and correct:

1. I am employed by the Pennsylvania Department of Corrections as the Director of the Bureau of Standards, Practices, and Security. My Bureau is responsible for maintenance and publication of all Department written policies, including the Administrative Directives.

2. Recently, the Department of Corrections published an amended Administrative Directive on Inmate Mail and Incoming Publications, DC-ADM 803, and provided it to all correctional institutions operated by the Department. It became effective July 15, 2004. A true and correct copy of it is attached.

I declare under penalty of perjury that the foregoing facts are true and correct.

Date: 7/19/04

Kathleen Zwierzyna
Kathleen Zwierzyna



| | |
|---|---|
| **POLICY STATEMENT** | |
| **Commonwealth of Pennsylvania • Department of Corrections** | |

| Policy Subject: | Policy Number: |
|---|---|
| **Inmate Mail and Incoming Publications** | **DC-ADM 803** |

| Date of Issue: | Authority: | Effective Date |
|---|---|---|
| **May 20, 2004** | *Jeffrey A. Beard* **Jeffrey A. Beard, Ph.D.** | **July 15, 2004** |

## I.    AUTHORITY

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, 71 P.S. §§61, 66, 186, and 310-1, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II.    PURPOSE

This document establishes policy and procedures governing inmate mail privileges and incoming publications.[1]

## III.    APPLICABILITY

This policy applies to every inmate and employee, volunteer, and contract vendor who resides or works in facilities under the jurisdiction of the Department with the exception of the Bureau of Community Corrections (BCC).

## IV.    DEFINITIONS

### A.    Approved Inmate Name

The committed name and/or a name change that is in accordance with Department policy, **11.5.1, "Records Office Operations."** The inmate may execute a **DC-155, Power of Attorney**, authorizing the receipt of mail and endorsement of checks in the

---

[1] 1-ABC-5D-01, 1-ABC-5D-04, 2-CO-5D-01

approved new name. After the execution of the new power of attorney form the inmate may send and receive mail, packages, and publications using the approved new name.

**B. Child Pornography**

The presentation of sexually explicit behavior involving or depicting children, as in a photograph, intended to arouse sexual excitement.

**C. Contraband**

An item that an inmate is prohibited from possessing or an item that an inmate is permitted to possess, but which has been altered or is being used for something other than its intended purpose.

**D. Control Number**

A number obtained through the Department's Office of Chief Counsel authorizing an attorney or court to utilize the Department's system designed to ensure institutional security as well essential, confidential attorney-client communications.

**E. Explicit Sexual Material**

Pursuant to **18 Pa. C.S.A. §5903** explicit materials include: any book, pamphlet, magazine, printed matter however reproduced, which contains any picture, photograph, drawing or similar visual representation or image of a person or portion of the human body which depicts nudity, sexual conduct, or sadomasochistic abuse and which is harmful to minors. Explicit sexual material also includes that which contains detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct or sadomasochism abuse and which, taken as a whole is harmful to minors.

**F. Facility Manager**

The Superintendent of a State Correctional Facility or State Regional Correctional Facility, Commander of a Motivational Boot Camp, Director of a Community Corrections Center, or Director of the Training Academy.

**G. Incoming Publications Review Committee (IPRC)**

A committee of facility personnel selected by the Facility Manager/designee at each facility that reviews incoming mail that may contain prohibited materials.

**H. Indigent Inmate**

An inmate shall be deemed indigent if the combined balances of his/her facility account and any other accounts are $10.00 or less at all times during the 30 days preceding the date on which the inmate submits a request to a person designated by the Facility Manager. Any inmate who refuses available work, although he/she is physically able and is not precluded from work by virtue of his/her housing status, is not indigent for the purposes of this policy and is not eligible for free stationery or to anticipate for postage. An inmate who is self-confined may also be considered as refusing available work although physically able as determined by the Program Review Committee (PRC). Any inmate who has funds in another account, which if deposited in his/her facility account

would bring his/her balance to more than $10.00, is not indigent. Any inmate who has not made a good faith effort to manage his/her money so as to be able to pay the necessary costs of litigation himself/herself is not indigent.

**I.  Facility Mail Distribution System**

The system used to deliver and pick-up mail from inmates within a facility.

**J.  Nude Photographs**

As defined in **18 Pa. C.S.A. §5903**, nude means "showing the human male or female genitals, pubic area or buttocks with less than a fully opaque covering, or showing the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple." A photograph is an image of a person, place, or object made using a camera or device, which exposes a photosensitive surface to light. For purposes of this policy, pictures in a magazine or other publication of general circulation shall not be considered photographs.

**K.  Obscene Material**

The definition of obscene contained in **18 Pa. C.S.A. §5903,** is "any material or performance, if:

1.  the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;

2.  the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section (sexual conduct is defined as patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, anal or oral sodomy and sexual bestiality; and patently offensive representations or descriptions of masturbation, excretory functions, sadomasochistic abuse and lewd exhibition of the genitals); and

3.  the subject matter as a whole, lacks serious literary, artistic, political, educational or scientific value."

**L.  Opaque**

Opaque refers to something dense, impervious to the passage of light.

**M.  Presorted Standard Mail**

Mail that usually consists of sales flyers, form letters, or other printed pieces that are generally identical in content but do not meet the criteria of a publication as defined in **Section IV. P.** of this policy. This mail is specifically identified with a United States Postal Service Presorted Standard Mail Stamp.

**N.  Privileged Correspondence**

1.  Outgoing Privileged Correspondence: Outgoing mail addressed to the following persons is privileged correspondence and shall not be opened outside the presence of the inmate who is sending it except as provided for in **Section VI. D. 2.**:

a. Elected or appointed federal, state, or local officials: One to whom the inmate has petitioned to redress a grievance. The term elected or appointed official includes, but is not limited to, the courts, the President of the United States, the Governor, the Attorney General and the District Attorney. The term elected or appointed official does not include the Veterans Administration, Bureau of Motor Vehicles, Social Security Administration, Department of Education, the Pennsylvania Prison Society, the Pennsylvania Board of Probation and Parole or to agencies to whom the inmate has applied for benefits.

b. Attorney: Any person authorized under applicable law to practice law and who is engaged in an attorney/client relationship with the inmate addressee. All correspondence to attorneys must be clearly marked with the attorney's full name, or the full name and address of the law firm, printed on the envelope for it to be considered privileged.

2. Incoming Sealed Privileged Correspondence: Mail from the court or an inmate's attorney that has been sealed pursuant to **37 Pa. Code § 93.2** and in accordance with the procedures set forth in **Section VI. B. 2.** of this policy.

## O. Prurient

Obsessively interested in sexual matters; marked by an obsessive interest in sex; arousing or appealing to an obsessive interest in sex.

## P. Public Mail Systems

The United States Postal Service and private carriers who serve the public with systems to move pieces of mail from one location to another.

## Q. Publications

Printed material that is circulated among the public for conveying information. This includes newspapers, magazines, hardcover or paperback books, pamphlets and newsletters, regardless of Postal Rate, that are not specifically intended for the purpose of advertising or selling merchandise.

## R. Storage Space

An inmate in general population shall be permitted storage space equal to four records center boxes. This space may be made up of the four records center boxes or one footlocker and two record center boxes. In cells that have a built-in, or a freestanding storage cabinet, the inmate is permitted to use that space and either two records center boxes or one footlocker.

An inmate in Disciplinary Custody status shall be permitted storage space in accordance with Department policy **DC-ADM 801, "Inmate Discipline."** An inmate in Administrative Custody status shall be permitted storage space in accordance with Department policy **DC-ADM 802, "Administrative Custody Procedures."** A Capital Case inmate shall be permitted storage space in accordance with Department policy **6.5.8, "Capital Case Administration."**

**S. Undeliverable Mail**

   Mail that cannot be identified for delivery due to incomplete or incorrect information.

## V.  POLICY

   It is the policy of the Department to provide an inmate access to communication with members of society through the established public mail system,[2] to inspect mail, determine the types of publications allowed, and to review publications intended for inmates.[3] Restrictions shall be related directly to facility order and security, public safety*,* and obscenity laws and statutes.[4]

## VI.  PROCEDURES[5]

**A. Mail Privileges**

1.  An inmate shall be permitted to correspond with the public, his/her attorney, and public officials.[6]

2.  There shall be no limit to the number of correspondents to whom an inmate may send or from whom an inmate may receive mail.[7]

3.  An inmate may not:

    a.  correspond with another inmate, former inmate, parolee, probationer, co-defendant, or victim(s) of the inmate's criminal acts except with the written approval of the Facility Manager. The Office of the Victim Advocate will provide verification that an individual is a victim of the inmate's criminal acts, at the request of the Facility Manager;

    b.  transfer or receive through any means whatsoever, negotiable instruments, money, or items of monetary value to or from any other inmate, a former inmate, parolee, probationer, co-defendant, or victim(s) of the inmate's criminal acts or his/her immediate family without prior written approval of the Facility Manager/designee;

    c.  correspond with a current or former employee, current or former volunteer, or current or former contract employee except with the written approval of the Facility Manager/designee;

    d.  send or receive correspondence containing threatening or obscene materials, as well as correspondence containing criminal solicitations or furthering a criminal plan or misconduct offense;

---

[2] 4-4492
[3] 1-ABC-5D-04, 1-ABC-5D-07
[4] 4-4487, 4-4488, 4-4490, 1-ABC-5D-02
[5] 4-ACRS-6A-07
[6] 4-4266, 4-4275, 4-4487, 4-4492
[7] 4-4266, 4-4487, 4-4488

e. use the facility address to fraudulently identify himself/herself as an employee, agent or representative of the facility; For example:

> Theodore Smith, Paralegal
> SCI Mahanoy
> 301 Morea Road
> Frackville PA 17932

f. write to an individual who has informed the Department, in writing, that he/she does not wish to receive correspondence from the inmate. This restriction is not to be interpreted to infringe on the right of an inmate to correspond with a public official with regard to the performance of his/her official duty. When the inmate is given a "no contact" restriction, the name of the individual who requested the restriction, and the date the restriction was issued to the inmate, shall be entered into the Unit Management System, under the "security" tab.

g. correspond with any prohibited party directed through a third party;

h. send or receive battery-operated greeting cards;

i. send or receive "bill-me-later" or free gift transactions; and

j. receive correspondence or homemade artwork in correspondence that has any item affixed to it (excluding mailing labels) with glue or other types of adhesives, including tape. An unaltered, commercially manufactured greeting card, other than a battery operated greeting card, will be permitted.

4. Each inmate will be permitted, without cost, to mail 10 one-ounce, first-class letters per month.[8]

5. There will be no limit on the number of letters that an inmate may send at his/her own expense.[9] Envelopes are available for purchase through Commissary. In the event an inmate has purchased envelopes prior to a transfer to another facility, the inmate shall be allowed a one-on-one exchange of envelopes upon arrival at the new facility.

6. No obscene material or contraband shall be written or drawn on, or contained in the mail. Such mail will be opened, returned to the sender, or disposed of at the inmate's expense.

7. Incoming and outgoing correspondence, other than privileged correspondence, may be opened and inspected if there is reason to believe that the security of the facility may be impaired or this directive is being violated.[10] Incoming and outgoing correspondence, other than privileged correspondence, may be read upon the written order of the Regional Deputy Secretary and reproduced upon written order of the respective Regional Deputy Secretary in accordance with **Section VI. D. 1. C.,** below.[11]

---

[8] 4-4489, 1-ABC-5D-03, 4-ACRS-6A-06
[9] 4-4488, 1-ABC-5D-02
[10] 4-4491
[11] 4-4488, 1-ABC-5D-05

8. All outgoing mail shall include on the envelope the full-approved inmate name, Department inmate number, and return address printed in a legible, undisguised manner on the upper, left-hand corner of the envelope. An envelope not bearing this information will be opened and returned to the inmate, if identified.

9. All outgoing correspondence will be stamped **"Inmate Mail - PA. DEPT. OF CORRECTIONS."**

10. The inmate shall seal and place all outgoing correspondence in the collection boxes provided in each housing unit and/or other designated locations.

11. Every inmate is prohibited from receiving nude photographs.

12. In accordance with **18 Pa. C.S.A. § 5903**, the Department will not disseminate obscene or explicit sexual materials to an inmate under the age of 18. Any inmate under the age of 18 found to be in possession of explicit sexual materials will be subject to a misconduct in accordance with **DC-ADM 801, "Inmate Discipline."**

## B. Privileged Correspondence

1. Outgoing Privileged Correspondence: In order to be treated as outgoing privileged correspondence, the inmate's approved name and Department number shall be printed in a legible, undisguised manner on the upper, left-hand corner of the envelope. The letter must be addressed to a specific attorney, law firm[12] or elected or appointed federal, state, or local official as specified in the definition of "Outgoing Privileged Correspondence." **(See Section IV. N. 1.)**

2. Incoming Privileged Correspondence: Mail from an inmate's attorney will be handled as outlined in **Subsection VI. B. 2. a.** or **VI. B. 2. b.** below.[13]

   a. Sealed Privileged Mail

      (1) An attorney or authorized representative/designee may hand-deliver a sealed confidential client communication to one of the facilities listed in **Department of Corrections Facilities**, **(Attachment A)**, if the attorney is unable to communicate through alternative means.

      (2) The person making the delivery must do so during normal business hours unless granted permission in advance by the Secretary/designee or the Facility Manager/designee.

      (3) The person making the delivery shall provide valid identification and information sufficient to verify that the person is the inmate's attorney or authorized representative of the attorney.

      (4) The person making the delivery shall present the documents for inspection for contraband. The documents must be unsealed and unbound when presented to allow for search. They must be presented in an envelope on

---

[12] 4-4274, 4-4275
[13] 4-4275

which sufficient postage has been affixed, unless the delivery is made at the facility at which the inmate is housed.

(5) An **Incoming Privileged Mail Receipt Log (Attachment B**) shall be maintained to include the name of the person who delivered the mail, name of the staff member who received the mail, the form of identification presented, a description of the document presented for inspection, the number of pages and the date that it was placed in the U.S. mail.

(6) The documents will be searched, but not read. They will then be sealed in an envelope in the presence of the person submitting the documents and the person will sign the envelope over the seal. The envelope will be marked with a Department "Privileged Correspondence Stamp" that indicates that Department staff has searched it and that it shall be opened in the presence of the inmate.

(7) The envelope will then be placed in the U.S. mail, within 24 hours of receipt, by the staff member who searched and sealed the envelope unless either the delivery is made at the facility at which the inmate is housed or prior arrangements for alternate delivery are made with the Facility Manager/ designee at the facility accepting the documents.

(8) Upon receipt at the facility where the inmate is housed, the envelope will be unsealed and searched again for contraband in the presence of the inmate.[14]

(9) A court may direct delivery of court documents sealed from public disclosure to an inmate by specific order. The court's representative shall deliver the sealed documents and the specific court order to a facility listed in **Attachment A** and the document will be processed as set forth for attorney mail above.

b. Control Number

(1) An attorney or court may seek advance permission from the Department's Office of Chief Counsel to use an attorney control number. If a control number is obtained and used as set forth below, mail from an attorney or court using the number shall be opened in the presence of the inmate.

(2) An attorney or court seeking a control number shall send a letter via facsimile to number 717-975-2217 to the attention of Office of Chief Counsel, Control Number Request.

(a) A letter from an attorney shall request a control number and shall include the attorney's name, address, telephone and facsimile numbers as well as his/her state attorney identification number. The letter shall also contain verification subject to the penalties of **18 Pa. C.S. §4904** relating to unsworn falsification to authorities that all mail he/she sends to an inmate using the control number shall contain only essential,

---

[14] 4-4492

confidential, attorney-client communication and shall contain no contraband.

(b) A letter from a court requesting a control number shall be on official letterhead and shall be signed by any judge or chief non-judicial officer of the court (e.g., chief clerk). Although the request from the court need not contain a verification, the control number should be used only for mail the sender truly deems confidential.

(3) Within one business day of receipt of the facsimile, the Office of Chief Counsel shall provide the attorney or court with a control number that will be applicable to all mail sent from that attorney or court to any Department inmate. This shall be a confidential number that shall not be revealed to any inmate.

(4) A law firm, law office or court that has more than one person who corresponds with an inmate may request a single control number for the entire office. The office must designate one person to be responsible to check all mail to an inmate for contraband and to be sure that it only contains essential, confidential communication. The name of that person must be identified in the letter seeking the control number. The Department shall be notified if a different person is substituted.

(5) The attorney or court shall place the control number on each envelope to be mailed to an inmate that the attorney or court wishes to have opened in the inmate's presence. This number is to be placed only on the envelope and not placed on any of the pages of the documents. The envelope may then be mailed to the inmate at the facility at which he/she is housed.

(6) Mailroom staff shall cross out the control number with a permanent marker or other method prior to the envelope being sent to the inmate's housing location for delivery to the inmate.

(7) If the procedures set forth in **Section VI. B. 2. b. (1) through (6)** above are followed, mail shall be opened for the first time in the presence of the inmate. If a control number does not appear on the envelope, the mail shall be treated as regular mail and opened in the mailroom unless the procedures set forth in paragraphs **Section VI. B. 2. a.** were followed.[15]

(8) The Department may change the control number for any reason upon notice to the attorney or court that requested it.

(9) If, upon opening the envelope in the presence of the inmate, the staff member without reading the contents notices that the contents contain absolutely no legal material (contains only a publication readily available to the public with no handwritten notations from counsel), the staff member shall issue the contents to the inmate and complete a **DC-121 Part 3, Employee Report of Incident,** in accordance with Department policy **6.3.1, "Facility Security"** for submittal to the Shift Commander and the Facility

---

[15] 4-4275

Manager/designee. This report shall include: what contents were deemed not to be legal material; the name and Department number of the inmate who received the mail; and the name and address of the person who sent the mail. The Facility Manager/designee shall forward a copy of the staff member's report to the Office of Chief Counsel and the Bureau of Standards, Practices, and Security for review and tracking.

3.  Mail that appears to be from a court, but bears no control number, shall be opened and inspected for contraband by the facility's mailroom staff in accordance with **Section VI. D. 1.** of this policy. If no contraband is found, the contents shall be placed back into the envelope, which shall then be taped or stapled shut. Staff shall then deliver this court mail to the inmate in accordance with **Section VI. B. 2. b. (6)** above, ensuring that a staff member hands the mail directly to the inmate. However, the delivering staff member need not re-open and re-inspect this court mail.

**C. Stationery, Pen, and Postage for Indigent Inmates**

Upon written request, an indigent inmate shall be provided with stationery and a pen, and shall be able to anticipate the cost for postage to file papers necessary to the good-faith pursuit of legal remedies.[16]

1.  No-Cost Stationary and Pens

    a.  An inmate who needs no-cost stationery may submit a request to the Facility Business Manager/designee. The request shall contain:

        (1)  the date of the request;

        (2)  the approximate quantity of paper needed to prepare the legal documents;

        (3)  whether a pen or the use of a pen is needed;

        (4)  the current balance in his/her inmate facility account, if known; and

        (5)  the court, case/docket number, caption and type of case.

    b.  The Business Manager/designee shall review the information contained in the request slip and verify that the inmate has insufficient funds to purchase the needed material. This determination shall be based on the definition of "Indigent Inmate" in **Section IV. I.** of this policy.

    c.  The Business Manager/designee shall respond to the request within five working days of receipt.

    d.  Upon approval, the inmate shall be provided free of charge:

        (1)  the use or permanent possession of a common type of stick ball pen; and

---

[16] 4-4274, 4-4276, 1-ABC-5D-06, 4-ACRS-6A-06

(2)  a packet of 50 sheets of clean paper and five sheets of carbon paper. Paper must be 8 ½" x 11" in size. Should the quantity of paper or carbon paper provided prove to be insufficient, the inmate may submit a request for one more additional packet per month.

2.  Postage and Copying

a.  Anticipated Postage

(1)  An indigent inmate may anticipate on his/her account for legal mail and copying charges of up to $10.00 per month.[17] Under no circumstances, shall the Business Manager/designee approve requests in excess of $10.00 per month. An inmate is responsible for managing his/her funds and monthly postage allowance to meet his/her legal needs.

(2)  The Business Manager/designee shall respond to the request within five working days of receipt.

(3)  After all court-ordered deductions are taken in accordance with Department policy **DC-ADM 005, "Collection of Inmate Debts"** any monies received in an inmate's account shall be used to satisfy the postage debt and copying fees.

b.  Postage Limitations

An inmate will be permitted to anticipate the deposit of funds into his/her account for regular first-class postage only except that:

(1)  a "Petition for Review" to Respondents is the only legal document required to be served by <u>certified mail, return receipt</u>;

(2)  an inmate may use, but is not required to use, <u>certified mail, return receipt</u> to file a "Petition for Review" with the Court;

(3)  an inmate may not be permitted to anticipate the deposit of funds into his/her account to mail documents in any case in which he/she is not a party;

(4)  any misuse of postage and incomplete or false requests shall be grounds for disapproval of any further anticipation for postage and for discipline; and

(5)  The inmate may appeal any decision regarding this section as outlined in Department policy **DC-ADM 804, "Inmate Grievances."**

**D. Security**

1.  Incoming Correspondence

a.  The facility's mailroom staff shall open and inspect all incoming correspondence unless it is incoming privileged correspondence that shall be processed as set

---

[17] 4-ACRS-6A-06

forth in **Section VI. B. 2** above and opened in the presence of the inmate. Mailroom staff will not read incoming correspondence unless authorized to do so under sub-paragraph c. below.

b. Any item or material in incoming correspondence (internet pages, news articles, etc.) that is questionable in nature shall be reviewed by the IPRC for possible violations of **Section VI. F. 3. a.** and/or **Section VI. F. 3. b.** of this policy.

c. Incoming and outgoing correspondence, other than privileged correspondence, may be read upon the written order of the Regional Deputy Secretary and reproduced upon written order of the respective Regional Deputy Secretary only when there is reason to believe that the security of the facility may be threatened, that this directive is being violated, or there is evidence of criminal activity or of a misconduct offense.[18] In those cases where the Regional Deputy Secretary's approval is required, a request must be made in writing every 30 days for continued reproduction of correspondence. This request should also include a brief update of the ongoing investigation.

d. The facility Security Office is required to submit a quarterly report to the appropriate Regional Deputy Secretary outlining all inmate correspondence being monitored/reproduced. **(See Attachment C)**

e. When mailroom staff receives a federal income tax refund check for an inmate, he/she shall notify the local Intelligence Captain/Security Lieutenant. The Intelligence Captain/Security Lieutenant shall contact the appropriate Internal Revenue Service (IRS) Special Agent and advise him/her of the inmate's name, social security number, and check amount. The IRS Special Agent shall verify whether or not the refund is legitimate and advise the security office within 24 hours of notification.

f. When mailroom staff receives a birth certificate for an inmate, he/she will forward it to the Business Office, to be held until the inmate is released, and notify the inmate and his/her counselor of the receipt of the birth certificate.

2. Outgoing Privileged Correspondence[19]

a. Outgoing privileged correspondence will not be opened, read, censored, or reproduced outside the presence of the inmate, except under the following conditions:

(1) with the prior written approval of the Secretary/designee. A request for approval to open, read, censor, or reproduce outgoing privileged correspondence outside the presence of the inmate must be made in writing to the Secretary/designee and must state the reason for the request; and

---

[18] 4-4491, 4-ACRS-6A-08
[19] 4-4492

(2)  permission shall be granted only when there is reason to believe the correspondence may reveal or discuss planned or future criminal activity including but not limited to the following:

    (a)  any information relating to a possible escape;

    (b)  the introduction of weapons, drugs, money, or other contraband that presents a clear threat to the security of the facility;

    (c)  any information relating to a possible prison disturbance or other activity that presents a clear threat to the security of the facility; and

    (d)  any information relating to other criminal activity. Specifics of suspected activity must be provided.

b.  A log shall be kept of instances where mail is read, and the inmate shall be notified unless such notification would impede an investigation of misconduct or suspected criminal activity. The inmate shall be notified that his/her mail was read at the completion of the investigation.

## E. Handling and Distribution of Mail

1.  Outgoing mail placed in the housing unit collection boxes or other designated locations shall be collected each day, Monday through Friday. A reasonable effort shall be made to ensure that such mail is delivered to the US Postal Service on the same day.

2.  Incoming mail, including packages, shall be processed daily (excluding weekends and state/federal holidays) as listed below: [20]

a.  The facility will not accept any mail that has postage due.

b.  Every piece of inmate mail shall be checked against the inmate roster.

c.  If an inmate has been transferred or released, mail shall be forwarded, unopened, to the new address, if known, for 60 days.[21] If no forwarding address is available, mail shall be returned, unopened, to the sender. It is the responsibility of the inmate to notify correspondents and publishers of a change of address.

d.  If an inmate elects to have mail held by the mailroom while on furlough or an Authorized Temporary Absence (ATA), a formal notification, in writing, may be required by the facility, and appropriate procedures shall be established by the facility.

e.  Each piece of incoming mail shall be delivered to the inmate within 24 hours and packages shall be held no more than 48 hours, excluding weekends and holidays.[22]

---

[20] 1-ABC-5D-09
[21] 4-4496, 1-ABC-5D-10, 4-ACRS-6A-09
[22] 4-4495

f. Any inmate who receives a letter of a disturbing nature should bring the matter to the attention of the housing unit officer and make arrangements to discuss the problem with his/her Unit Manager or Counselor.

3. Incoming mail shall be opened and inspected for contraband in the facility's mailroom.[23]  Money orders and certified checks shall be recorded, indicating the nature of the receipt, the sender, the amount received, and the date.[24] A **DC-130B, Cash Transaction Receipt** shall be issued to the inmate for all amounts received. The money order and/or certified check shall be forwarded to the facility Business Manager who shall deposit the money into the inmate's account.[25]

4. The facility will not accept personal checks or cash sent through the mail. If a personal check or cash is discovered during an inspection for contraband, the entire piece of mail is to be returned to the sender with a notice that it is being returned because of non-permitted contents.[26]

5. All incoming mail must include the approved inmate name and Department number.

6. If incoming correspondence is determined to be undeliverable for any reason other than those stated in **Section VI. A. 3.**, it shall be marked appropriately and returned to sender at the inmate's expense or otherwise disposed of.

7. Incoming mail containing contraband shall be confiscated and held for further inspection and disposition. The contraband shall be returned to the sender (if known), or it shall be destroyed.[27]

8. All correspondence which is read and/or withheld in accordance with this directive and appears to be in violation of **Section VI. A. 3.** shall be handled as follows:

a. the Deputy Superintendent for Facilities Management (DSFM)/designee shall review correspondence and shall notify the inmate and the sender when a letter is rejected.[28]

b. the correspondence may be held for at least seven working days after notification is sent, to permit reasonable opportunity to appeal the decision. The Facility Manager/designee shall respond to all appeals and make a final decision as to whether the correspondence shall be rejected; and

c. an inmate who violates this directive shall not lose basic correspondence privileges. However, violations may result in the monitoring of mail until such time as it is determined that further violations shall not occur. Any violation of this directive may result in misconduct charges being filed.

9. The inmate shall be notified when outgoing mail is being withheld.[29]

---

[23] 4-4491, 1-ABC-5D-08
[24] 4-4494, 1-ABC-5D-07
[25] 4-4493
[26] 4-4493
[27] 4-4494
[28] 4-4491
[29] 4-4491

10. Presorted Standard Mail

   Most magazines and newspapers are sent by Presorted Standard Mail. Since the inmate has a paid subscription for magazines and newspapers, they are to be permitted.

11. Certified or Registered Mail

   a. Each facility shall establish procedures in cooperation with the local Postmaster for the processing of certified and registered mail.

   b. Determination of mail to be sent by these methods shall be the responsibility of the inmate.

   c. Except as provided in **Section VI. C.,** the inmate must have funds available in his/her account and an approved cash slip for such postage payment in order to send mail certified or registered.

12. Inmate Organization Correspondence

   a. Only approved inmate organizations as defined by Department policy **7.8.1, "Inmate Recreational and Therapeutic Activities"** may send and receive mail.

   b. Payment of postage is the responsibility of the inmate organization.

   c. All incoming and outgoing inmate organization correspondence must be reviewed and approved by the facility staff coordinator for the organization.

   d. All outgoing correspondence must be reviewed by the staff coordinator for the organization to ensure compliance with Department policies.

   e. Outgoing correspondence must be sealed and delivered to the mailroom by the staff coordinator.

**F.  Incoming Publications**

1. General Procedures

   a. All publications must be received from the original source. Covers of hardbound publications may be damaged through examination or removed where inspection of the cover is deemed necessary and no reasonably available alternative form of inspection is adequate.[30]

---

[30] 4-4490

b. Magazines must be mailed directly from the original source. Single copies of small letter-sized pamphlets may be received in regular correspondence from family members, friends, or religious advisors.[31]

c. Newspapers may be mailed or delivered to the facility.[32]

d. Publications, new or used, that are sent directly from a publisher, bookstore, book club, distributor, or department store shall usually be deemed to have come from the original source.[33]

e. Newsletters and other mail from recognized non-profit religious and charitable organizations, when addressed to an individual inmate shall be delivered to the inmate even if mailed at less than first or second-class mail rates (Presorted Standard Mail rate).

f. If a publication contains questionable content, mailroom personnel, education staff, or the librarian shall be responsible for forwarding these publications to the IPRC.[34]

g. If a publication contains a free sample item (lotion, perfume, etc.), the Facility Manager/designee shall review the item to determine if it shall be permitted into the facility. If it is determined that the item is not to be permitted into the facility, it is to be removed from the publication and the publication is to be delivered to the inmate.

h. An inmate may receive more than one copy of any publication only with special approval of the IPRC.

i. Upon transfer, publications approved at one facility shall not necessarily be permitted in another facility. The IPRC at the receiving facility will review any publications that are deemed questionable.

j. Upon receipt of mail sent at less than First or Second Class Rate, the mail inspector shall verify that the stamp specifically states "Presorted Standard Mail" and if the words "Presorted Standard Mail" are not printed on the mail, it shall be processed as regular incoming mail.

k. However, if the words "Presorted Standard Mail" are marked on the item, the mail inspector shall determine if the item meets the definition of a publication as defined in **Section IV. P**. If the criteria for a publication is met, it shall be accepted and processed in accordance with **Sections, VI. E. and F,** regardless of the postal rate at which it was mailed. If the item has a Presorted Standard Mail Stamp, but does not meet the criteria for a publication, delivery will be refused.

2. Review Process

---

[31] 4-4490
[32] 4-4490
[33] 4-4490
[34] 4-4490

a. The IPRC shall determine whether written or printed material is a publication within 10 days after the material is received.

b. Each issue of a publication shall be reviewed individually. No publication shall be banned without review unless it appears on the monthly circulated banned list. Any publication that contains one or more sections dealing with prohibited topics must be disapproved in its entirety. If a publication is disapproved because of a section(s) dealing with prohibited topics, facility staff or the original source may not alter the publication by removing the prohibited section(s) in an attempt to make the publication acceptable. The publication must remain in its original format.

c. The content shall be reviewed against the criteria listed in **Sections VI. F. 3. a. and b.** below.

d. A publication that is extensively circulated throughout the general public shall not be excluded for the sole reason that it contains sexually explicit material; however, it may be excluded if it contains material prohibited by the criteria guidelines.

e. The committee shall communicate its decision to the inmate and copy the Facility Manager/designee.

f. If a publication is disapproved the reason(s) shall be included.

g. No publication shall be prohibited solely on the basis that the publication is critical of penal facilities in general, of a particular facility, of a particular facility staff member, of an official of the Department or of a correctional or penological practice in this or in any other jurisdiction.

3. Criteria

A request for and receipt of a publication may be disapproved when the publication contains the following:[35]

a. Security Issues

(1) information regarding the manufacture of explosives, incendiaries, weapons, escape devices or other contraband;

(2) instruction regarding the ingredients or manufacture of poisons, drugs, or intoxicating beverages;

(3) writings which advocate violence, insurrection or guerrilla warfare against the government or any of its facilities or which create a danger within the context of the correctional facility;

---

[35] 1-ABC-5D-04

(4) writings that advocate, assist or are evidence of criminal activity or facility misconduct;

(5) racially inflammatory material or material that could cause a threat to the inmate, staff, and security of the facility shall be prohibited entrance into the facility;

(6) maps, road atlas, etc., that depict a geographic region;

(7) non-privileged mail containing official documents (driver's license, birth certificate, welfare card, medical cards, etc.). These documents shall be confiscated and placed in the designated safe. The correspondence only shall be forwarded to the inmate; and

(8) the above criteria should not be interpreted so broadly as to require disapproval of recognized textbooks in chemistry, physics or the social sciences.

b. Obscenity Issues

The following categories of material are considered "obscene:"

(1) where one of the participants in the act is, or appears to be, non-consenting;

(2) where one of the participants appears to be forceful, threatening, or violent;

(3) where one of the participants is dominating one of the other participants and one of the individuals is obviously in a submissive role or one of the participants is degraded, humiliated, or willingly engages in behavior that is degrading or humiliating;

(4) one of the participants is a child/minor, or appears to be a child/minor;

(5) where there is actual penetration, be it penile/vaginal-oral, penile-anal, or penile-vaginal; digital-anal, digital-vaginal; or insertion of any inanimate object in a body cavity, or the depiction in the context presented is deemed to be opposed to legitimate penological objectives;

(6) where any bodily excretory function is depicted;

(7) where the material depicts bestiality, sadomasochistic behavior, or bondage; and/or

(8) materials that depict or expressly encourage violent or assaultive sexual conduct, or involuntary deviant sexual contact.

4. Appeal Process

a. An inmate shall have the right to appeal a decision that results in the disapproval of a publication in accordance with Department policy **DC-ADM 804**.

b.  If the decision is appealed, the mailroom officer shall hold all questionable publications until the appeal process is completed.

c.  The publication shall be forwarded to the mailroom officer for final processing.

d.  If the inmate chooses not to appeal, a cash slip should be sent to the mailroom in order to mail the publication out. If the inmate refuses to submit a cash slip within 15 days of the decision, the publication shall be destroyed.

5.  Denied Publication Listing

a.  By the 15th of each month, the IPRC from each facility shall forward a list of publications that were disapproved at their facility for that month and the justification for denial, to the Executive Assistant to the Secretary/designee at Central Office.

b.  The Executive Assistant to the Secretary/designee shall compile a monthly list of all publications denied and, upon completion, distribute the list to the IPRC at each facility.

c.  All publications on the denied publications list shall be denied at all facilities.

d.  In the event that the decision to deny a publication is reversed via the appeal process, the Executive Assistant to the Secretary/designee shall notify the IPRC at each facility that the publication is to be permitted.

6.  Possession of Publications

a.  Each inmate in general population is permitted to retain the following quantity of publications in his/her cell:

(1)  three newspapers;

(2)  10 magazines; and

(3)  10 books (school books or otherwise), unless the facility's education department approves additional books.

b.  An inmate housed in an L5 Unit is permitted to retain quantities of written materials as outlined in Department policy, **6.5.1, "Administration of Security Level Five Housing Units."**

## VII.  SUSPENSION DURING AN EMERGENCY

In an emergency or extended disruption of normal facility operations, the Secretary/ designee may suspend any provision or section of this policy for a specific period.

## VIII.  RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted

to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose of the policies of the Department.

## IX.  RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

### A.  Release of Information

1.  Policy

    This policy document is public information and may be released upon request.

2.  Procedures Manual (if applicable)

    The procedures manual for this policy is <u>not public information</u> and shall not be released in its entirety or in part, without the prior approval of the Secretary/designee. This manual or parts thereof may be released to any Department employee on an as needed basis.

### B.  Distribution of Policy

1.  General Distribution

    The Department 's policy and procedure manuals (when applicable) shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis. Distribution to other individuals and/or agencies is subject to the approval of the Secretary/designee.

2.  Distribution to Staff

    It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures.

## X.  SUPERSEDED POLICY AND CROSS REFERENCE

### A.  Superseded Policy

1.  Department Policy

    This document supersedes the following documents:

    a.  DC-ADM 803, Inmate Mail and Incoming Publications issued September 1, 2002 by Secretary Jeffrey A. Beard, Ph.D.

      b.  DC-ADM 803-1, Inmate Mail and Incoming Publications issued January 5, 2004 by Secretary Jeffrey A. Beard, Ph.D.

  2.  Facility Policy and Procedures

     This document supersedes all facility policy and procedures on this subject.

## B.  Cross Reference(s)

  1.  Administrative Manuals

      a.  DC-ADM 005, Collection of Inmate Debts
      b.  DC-ADM 801, Inmate Discipline
      c.  DC-ADM 802, Administrative Custody Procedures
      d.  DC-ADM 804, Inmate Grievances
      e.  6.3.1, Facility Security
      f.   6.5.8, Capital Case Administration
      g.  7.8.1, Inmate Recreational and Therapeutic Activities
      h.  11.5.1, Records Office Operations

  2.  ACA Standards

      a.  Administration of Correctional Agencies: 2-CO-5D-01
      b.  Adult Correctional Institutions: 4-4266, 4-4274, 4-4275, 4-4276, 4-4487, 4-4488, 4-4489, 4-4490, 4-4491, 4-4492, 4-4493, 4-4494, 4-4495, 4-4496
      c.  Adult Community Residential Services: 4-ACRS-6A-06, 4-ACRS-6A-07,
      d.  Adult Correctional Boot Camp Programs: 1-ABC-5D-01, 1-ABC-5D-02, 1-ABC-5D-03, 1-ABC-5D-04, 1-ABC-5D-05, 1-ABC-5D-06, 1-ABC-5D-07, 1-ABC-5D-08, 1-ABC-5D-09, 1-ABC-5D-10
      e.  Correctional Training Academies: None