IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DERRICK DALE FONTROY, et al.,          :          CIVIL ACTION

                Plaintiffs          :

    v.          :

GOVERNOR MARK SCHWEIKER, et al.,          :

                Defendants          :          NO.  02-CV-2949

DEFENDANTS' MEMORANDUM IN RESPONSE TO
COURT ORDER FILED FEBRUARY 13, 2007 (DOCUMENT 296)

I.    The Court's Questions and Defendants' Answers.

The Court has requested memoranda of law addressing two questions:

1. How, if at all, the inmate mail handling procedures at issue in this action differ from those in the case of Robinson v. Pennsylvania Department of Corrections, 2000 WL 210096 (E.D. Pa. 2007); and

2. Why the decision and ruling in Robinson v. Pennsylvania Department of Corrections, supra, should not control or guide the court in ruling on the issues in this action?

Briefly, the essential inmate mail handling procedures at issue in this action are the same as those at issue in Robinson.  They are the Pennsylvania Department of Corrections procedures for handling mail sent to inmates from attorneys and courts.  The procedures are found in the Department's directive DC-ADM 803.

The decision in Robinson granting Defendants' Motion for Summary Judgment, filed January 23, 2007, should substantially persuade this Court to render the same decision in this case.  The Court in Robinson not only

considered the same Department policy, it considered the same evidentiary material and same legal arguments as have been presented in this case. Its analysis followed the directions of the U.S. Supreme Court and the Court of Appeals for the Third Circuit in similar cases. While Defendants believe the Court could have found less First Amendment protection, and could have more fully recognized the corrections officials' discretion to regulate protected activities, the result is surely correct.

II.     The Fontroy and Robinson Cases Are the Same.

A review of the proceedings in the Fontroy and Robinson cases show the similarity of the essential records before the Court in both, and their somewhat symbiotic relationship.

A.     Fontroy.

Plaintiffs here filed the original complaint on May 16, 2002. They were all convicts housed at the State Correctional Institution at Graterford. The defendants were the SCI-Graterford Superintendent and Mail Supervisor, as well as the Governor of Pennsylvania. The complaint challenged policies regarding mail sent to inmates from attorneys and courts that the Department of Corrections was about to implement. The policies were in a revision to the Department's overall policy on inmate mail, DC-ADM 803. The complaint claimed that the policies violated inmates' First Amendment and access to court rights.

Defendants moved to dismiss the complaint. After the revisions to DC-ADM 803 had been modified and gone into effect, Plaintiffs filed an Amended Complaint. It added Secretary of Corrections Jeffrey A. Beard as a defendant.

It claimed that the then implemented policies in DC-ADM 803 violated the inmates' access to court and free speech rights.

Defendants moved to dismiss the Amended Complaint.  Defendants supplemented their motion to dismiss several times, adding evidentiary materials.  Plaintiffs moved for summary judgment themselves.  In mid-2004, the Court appointed counsel for Plaintiffs.  The parties and the Court agreed that, despite its volume, the record was not sufficient to consider what by then were cross motions for summary judgment.

Depositions of the plaintiffs and Department staff and officials were taken in October 2004.  Defendants then, on December 8, 2004, filed a Supplemental Memorandum in support of their Motion for Summary Judgment. Document 209.  With the Memorandum, they filed appendices containing (1) the depositions of Jeffrey A. Beard (Secretary of Corrections), Kimberly J. Ulisny (Graterford Mail Supervisor), and John K. Murray (Graterford Deputy Superintendent); and (2) declarations of the same three officials and a Charles J. McKeown, with a "Privileged Correspondence Inspection and Contraband Report" and an "Escape Report, Huntingdon, November 1999." Documents 210, 211.  They also filed the Plaintiffs' depositions.  On April 11, 2005, Defendants supplemented the record further by filing the "Information, Testimony, and Exhibits from the Trial of Commonwealth v. Valdo Guilford, Somerset Co., No. 871 of 2003." Document 225.

On May 6, 2005, the Court filed an Order stating that the Court was awaiting decisions in three cases pending before the Court of Appeals for the

Third Circuit involving New Jersey and Delaware prison handling of mail from attorneys and courts. Document 227.  The Court of Appeals decided these cases in August 2006.  On September 12, 2006, this Court lifted its stay and requested supplemental memoranda regarding the effects of the Third Circuit decisions, as well as the recent decision of the U.S. Supreme Court in Beard v. Banks, 126 S.Ct. 2572 (2006). Document 280.  Defendants filed their Supplemental Memorandum on September 22, 2006. Document 283.

       B.     Robinson.

The Robinson case was filed September 15, 2003, by two SCI-Graterford inmates.[1]  The defendants were the Pennsylvania Department of Corrections; Secretary Beard; and the SCI-Graterford Superintendent, Business Manager, and Mail Supervisor.  The complaint challenged the constitutional validity of the same Department of Corrections DC-ADM 803 provisions regarding mail to inmates from attorneys and courts as the Fontroy plaintiffs were challenging. Like the Fontroy plaintiffs, the Robinson plaintiffs claimed that the provisions violated their First Amendment and access to court rights.

In mid-2004, the parties filed cross motions for summary judgment. Defendants' motion was filed June 28, 2004, and included declarations of Ms. Ulisny (the Mail Supervisor), Mr. Murray (the Deputy Superintendent), and

---

[1] Defendants are sending plaintiffs a copy of the docket in Robinson with their copies of this Memorandum.

Michael A. Farnan (Chief Counsel), as well as the Plaintiffs' depositions. Documents 18, 19, 20.[2]

On January 12, 2005, the Robinson Court placed the case in suspense pending what it erroneously referred to as the appeal in the Fontroy, et al., case. Document 34 (copy attached). It must have meant that it would wait until disposition of the same appeals from New Jersey and Delaware that were of concern to this Court. By order filed March 23, 2006, the Robinson Court stated that it would remove the Robinson case from suspense when the Fontroy case was removed from suspense. Document 36 (copy attached).

On September 14, 2006, the Robinson Court removed the case from suspense and permitted the parties to file supplemental evidentiary materials and memoranda of law relevant to the outstanding motions for summary judgment. Document 41 (copy attached). Defendants filed their Supplemental Memorandum of Law on September 25, 2006. Document 44. It was practically identical to the Supplemental Memorandum that Defendants had filed in Fontroy on September 22, 2006 (Document 283 there).[3] At the same time, Defendants filed appendices containing copies of the same depositions, declarations, reports, and other materials that they had filed in Fontroy – the depositions of Beard, Ulisny, and Murray taken in the Fontroy case; the declarations of Beard, Ulisny, Murray, and McKeown that they had filed in the

---

[2] The declaration of Michael A. Farnan filed in Robinson was a duplicate copy of the Second Declaration of Michael A. Farnan filed in the Fontroy case on May 29, 2003, as an attachment to Defendants' Response to Plaintiffs' Declaration Regarding Motion to Dismiss the Amended Complaint (Document 69).

[3] A copy of the Supplemental Memorandum filed in Robinson is attached to this Memorandum.

Fontroy case with the same "Privileged Correspondence Inspection and Contraband" report and "Escape Report, Huntingdon, November 1999" that they had filed in Fontroy; and the "Information, Testimony, and Exhibits from the Trial of Commonwealth v. Valdo Guilford" that they had filed in the Fontroy case. Document 46. The Plaintiffs also filed supplemental memoranda and responses to Defendants' memorandum. The Court issued its decision on January 23, 2007.

Thus, the Robinson decision considered the same issues and was based on the same record as is before the Court in this case, except for details as to the plaintiffs' individual experiences and litigation histories. Indeed, the Robinson Court saw the cases so closely related that it timed its stay pending the appellate decisions to run parallel to the stay in this case. Although two of the plaintiffs in this case are now housed at correctional institutions other than SCI-Graterford, where the Robinson plaintiffs (and plaintiff Wheeler here) remain, the essential policy in question is the Department of Corrections policy that applies at all of its correctional institutions.[4]

---

[4] The evidence in the records of both cases shows that at SCI-Graterford, "privileged" mail (mail bearing a control number) for general population inmates is opened in the inmates' presence at a window on the maintenance corridor of the prison, whereas at other of the Department's prisons this mail is opened in the inmates' presence on their housing units. Beard Dep. pp. 16, 17, 29. Plaintiffs in this, the Fontroy, case confirmed this based on their own experiences. Savage Dep. pp. 37-43; Fontroy Dep. pp. 40-41; Wheeler Dep. p. 38.

III.    The Robinson decision applied correct legal analysis, reached the correct result, and could have reached additional conclusions in Defendants' favor.

The Robinson Court's analysis of the right of prison officials to regulate inmates' First Amendment rights was correct and must apply here.  The Court applied the well-established test of Turner v. Safley, 482 U.S. 78 (1987), which was most recently refined by the Supreme Court in Beard v. Banks, 126 S.Ct. 2572 (2006).

The Robinson Court reached the correct result.  The record there, and here, was very different from the situation presented in Jones v. Brown, 461 F.3d 353 (3d Cir. 2006).  As the Court concluded, the record here shows that, to the degree the DC-ADM 803 impinges First Amendment rights at all, the procedures are rationally and reasonably related to legitimate governmental interests.  Indeed, if anything, the Robinson Court did not sufficiently note the Beard v. Banks emphasis on judicial deference to prison officials.  That deference only strengthens the result reached.

Defendants have three other quibbles with the Robinson Court's opinion, two legal, one factual.  (1) The Court should have raised its point in footnote 11 to a more emphatic conclusion: the First Amendment does not require opening of mail from courts in the presence of the inmates because mail from courts is almost always public documents, generally also sent to the inmates' opponents.  (2) The Court should have held that the First Amendment does not require logging of incoming mail.  No case even suggests that it does.  (3) Contrary to several statements in the opinion (e.g., p. 26), pre-2002 versions of the DC-ADM 803 did not require logging of incoming mail. Deposition of

Kimberly J. Ulisny, p. 143.  The evidence is only that it was done at SCI-Graterford. Ulisny Deposition, p. 121.

Plaintiff Wheeler has filed what he claims is an Affidavit of Norman Johnston, the inmate whose 1999 escape led to the Escape Report, Huntingdon, November 1999, filed in this case and the Robinson case.  The Affidavit claims that Johnston did not receive the escape tools in the mail, but that they were smuggled to him by corrupt staff.  However, the Department of Corrections' investigators suspected that even though the tools did not come directly to Johnston through the mail, they entered the prison through legal mail, and were then smuggled to Johnston. Escape Report, p. 23.

The "Affidavit" says that State Senate Hearings determined that nothing came through the mail, but it neither includes nor cites any document recording any such determination.  Defendants are not aware of any findings by any legislative body regarding Johnston's escape.  The evidence presented to a House of Representatives committee reviewing the escape was that the escape tools probably entered the prison in legal mail.  The witnesses (then Secretary Horn and the Huntingdon County District Attorney) described the ongoing security problems with opening mail only in the inmates' presence based on apparent attorney or court return addresses.  A copy of that testimony is being submitted with this Memorandum.[5]

---

[5] Defendants recall that the Senate Judiciary Committee held a hearing focusing on an escape from the State Correctional Institution at Dallas around the same time as Johnston's escape, and heard some testimony about the Johnston escape.  However, they do not believe that the testimony was ever transcribed.

Johnston doesn't deny that he himself had been caught passing drugs and escape tools in a hollowed out brief, showing that this method was one well-known to inmates. Escape Report, p. 23.  All of the information regarding Norman Johnston's escapades confirms what is obvious – dangerous material can be introduced into the prisons through the mail, and the more restrictions placed on the ability of prison staff to inspect the mail, the more likely the dangerous material will get to places where it causes harm.

In sum, the Court in Robinson v. Department of Corrections has upheld the same policy as is at issue here in response to the same claims as are made here.  Its analysis is essentially correct.  The Court should reach the same result here.

THOMAS W. CORBETT, JR.
Attorney General of Pennsylvania

By:   s/John O. J. Shellenberger
_____

John O. J. Shellenberger
Chief Deputy Attorney General
Attorney I.D. No. 09714
Attorney for Defendants

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107
Phone: (215) 560-2940
Fax:    (215) 560-1031

<u>CERTIFICATE OF SERVICE</u>

I, John O. J. Shellenberger, hereby certify that DEFENDANTS'

MEMORANDUM IN RESPONSE TO COURT ORDER FILED FEBRUARY 13,

2007 (DOCUMENT 296) has been filed electronically and is available for

viewing and downloading from the Court's Electronic Case Filing System.  I

further certify that a true and correct copy of  DEFENDANTS' MEMORANDUM

IN RESPONSE TO COURT ORDER FILED FEBRUARY 13, 2007 (DOCUMENT

296) was mailed on March 30, 2007, by first class mail, postage prepaid to:

Derrick Dale Fontroy, AY-7513          Aaron Christopher Wheeler, BZ-2590
State Correctional Institution          State Correctional Institution
at Forest                               at Graterford
P.O. Box 307                            P.O. Box 244
Marienville, PA 16239-0307             Graterford, PA 19426-0244

Theodore B. Savage, CB-2674
State Correctional Institution
at Cresson
Drawer A, Old Route 22
Cresson, PA 16699-0001


                                        s/ John O. J. Shellenberger
                                        ————————————————————
                                        John O. J. Shellenberger
Office of Attorney General              Chief Deputy Attorney General
21 S. 12th Street, 3rd Floor            Attorney I.D. No. 09714
Philadelphia, PA 19107
Phone: (215) 560-2940
Fax:    (215) 560-1031

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS ROBINSON, et al., | : | CIVIL ACTION |
|     Plaintiffs | : | |
| | : | |
| v. | : | NO. 03-CV-05180 |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTION, et al., | : | |
|     Defendants | : | |

### O R D E R

STENGEL, J.

AND NOW, this 11th day of January, 2005, it appearing that the issues in this case closely resemble the issues in Derrick Dale Fontroy, et al. v. Mark S. Schweiker, et al., Civil Action No. 02-2949, currently on appeal to the Third Circuit Court of Appeals, it is hereby ORDERED that:

1.    The Clerk of Court shall transfer this action to the Civil Suspense file;

2.    The case shall be marked closed for statistical purposes; and,

3.    The court shall retain jurisdiction and the case shall be returned to the trial docket upon the rendering of a decision in the above-cited case.

BY THE COURT:

  /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS ROBINSON, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 03-05180 |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT | : | |
| OF CORRECTIONS, et al., | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

**AND NOW**, this 23rd day of March, 2006, upon consideration of Plaintiffs'

motion to remove this case from suspense (Docket No. 35), it is hereby **ORDERED** that

the motion is **DENIED**.  This action shall be removed from suspense when <u>Fontroy v.

Schweiker</u>, Civil Action No. 02-02949, is removed from suspense.

BY THE COURT:

_/s Lawrence F. Stengel_____
LAWRENCE F. STENGEL, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS ROBINSON              :      CIVIL ACTION
LUIS RAMIREZ,                     :
                                      :
      Plaintiffs,                 :      NO. 03-05180
                                        :
          v.                       :
                                        :
PENNSYLVANIA DEPARTMENT OF     :
CORRECTIONS, ET AL.,              :
                                        :
      Defendants.               :

## <u>ORDER</u>

**AND NOW**, this day 13th of September, 2006, it is **ORDERED** that

     1. This case is removed from Civil Suspense.

     2. The documents filed by Plaintiffs titled "Plaintiffs Request this Court to Grant Their Summary Judgment Motion And Their Amendment To Damages Petition" (Docket Nos. 38 & 39) are construed as a Motion for Leave to Amend the Complaint and is **DENIED**;

     3. The documents filed by Plaintiffs titled "Plaintiffs Request this Court to Grant Their Summary Judgment Motion And Their Amendment To Damages Petition" (Docket Nos. 38 & 39) are also construed as a Motion for Summary Judgment and is **DENIED;**

     4. The parties may, within ten days after entry and service of this Order, file supplemental evidentiary materials and memoranda of law relevant to the outstanding cross-motions for summary judgment. The parties may file responses to each others' submissions within another ten days thereafter.

BY THE COURT:


/s/ Lawrence F. Stengel

LAWRENCE F. STENGEL, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS ROBINSON & LUIS RAMIREZ, | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., | : | |
| Defendants | : | NO. 03-5180 |

DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW
REGARDING RECENT THIRD CIRCUIT AND SUPREME COURT CASES

STATEMENT OF THE CASE

Plaintiffs are challenging the Pennsylvania Department of Corrections policy on handling what Plaintiffs call "legal/court mail" sent to them at the State Correctional Institution at Graterford. The policy generally requires that mail inspectors unseal and inspect all incoming mail in a mail room not in the addressee inmates' presence before delivery to the inmates on their housing units. However, the policy allows attorneys and courts to get control numbers from the Department and requires that envelopes bearing valid control numbers be unsealed only in the addressee inmates' presence. It also provides that mail apparently from courts, but without control number, be handed directly to the addressee by staff on the inmates' housing units (after unsealing and inspection in the mail rooms).

Plaintiffs contend that all "legal/court mail" addressed to them must be unsealed and inspected in Plaintiffs' presence and handed to them then and

there, without any need for control numbers.  They define "legal/court mail" as mail with return addresses from attorneys, courts, or various government agencies and officials.  They appear to base their claim on the First Amendment and the right of access to the courts.

The Court has before it cross-motions for summary judgment.  It has been holding the case in suspense pending decisions by the Court of Appeals in three cases: Taylor v. Oney, No. 04-2062; Jones v. Brown, No. 03-3823; Allah v. Codey, No. 04-4426.  On August 24, 2006, the Court of Appeals issued its decisions in these cases.

The decision in Taylor v. Oney is of little interest.  It affirmed entry of summary judgment in favor of the defendants on the ground that none of the defendants were personally involved in the violation alleged there.  The joint decision in Jones and Allah (2006 WL 2441412) dealt more substantially with First Amendment issues.  It held that, on the record before the court, New Jersey had not justified its current incoming legal mail procedure sufficiently to validate it in light of its likely effect on the inmates' First Amendment rights.

The Jones-Allah decision does not change Defendants' position here: the Pennsylvania DOC policy on handling of mail from attorneys and courts does not violate Plaintiffs' First Amendment rights.  This position finds support not only in the Jones-Allah decision itself, but also in the recent Supreme Court decision in Beard v. Banks, 126 S.Ct. 2572 (2006).

Defendants are supplementing the record here with evidentiary materials previously filed in the parallel case of Fontroy, et al. v. Beard, et al., No. 02-cv-

2

2949, where other Pennsylvania prisoners are challenging the same policy regarding incoming legal mail.  The supplementary materials (filed on paper) are:

> Deposition of Jeffrey A. Beard;
>
> Deposition of Kimberly J. Ulisny;
>
> Deposition of John K. Murray;
>
> Declaration of Jeffrey A. Beard, with Escape Report, Huntingdon, November 1999;
>
> Declaration of Charles McKeown with Privileged Correspondence Inspection and Contraband Report, September 20, 1999;
>
> Declaration of Kimberly J. Ulisny;
>
> Declaration of John K. Murray;
>
> Information, Testimony, and Exhibits from the Trial in Commonwealth v. Valdo Guilford, Somerset Co., No. 871 of 2003.

<u>ARGUMENT</u>

The Pennsylvania Department of Corrections Policy on Mail from Attorneys and Courts Does Not Violate Plaintiffs' First Amendment Rights <u>in Light of the Recent Third Circuit and U.S. Supreme Court Decisions.</u>

This case differs from Jones-Allah in ways that the Court of Appeals, and the Supreme Court, would find legally significant.  First, the Pennsylvania policy differs from the New Jersey policy considered in Jones-Allah.  The Pennsylvania policy has little or no adverse impact on First Amendment rights. Second, New Jersey attempted to justify its policy with a single rationale without any record evidence to support it.  Here, the record contains substantial evidence showing that the Pennsylvania policy is both rationally

and reasonably related to legitimate penological interests.  It reflects careful exercise of professional judgment by experienced corrections administrators.

The record in Jones-Allah showed that the New Jersey Department of Corrections had, in October 2001, suspended an existing regulation requiring that "incoming legal correspondence be opened and inspected in front of the inmate to whom it is addressed."  After the suspension, New Jersey required that a correctional officer open and inspect incoming legal correspondence in a mail room not in the presence of the inmate.  New Jersey's sole justification for the suspension was to reduce the risk of anthrax contamination in the prisons. The only basis New Jersey offered for the risk was the publicly known events of September-October 2001 when letters containing anthrax were mailed to several business and government offices in the United States.  The suspension had not been lifted since October 2001.

The Court of Appeals held that a prisoner's conviction and sentence do not forfeit his First Amendment right to communicate through the mails.  The court then jumped to the conclusion that a policy of opening legal mail outside the prisoner's presence impinges on that right.[1]  However, it recognized that prison administrators may restrict and regulate prisoners' retained First Amendment rights regarding legal mail, so long as the regulation is "reasonably

---

[1] The court of appeals considers incoming "legal mail" to consist only of mail from attorneys and courts. Bieregu v. Reno, 59 F.3d 1445, 1449 (3d Cir. 1995). See also Mann v. Adams, 846 F.2d 589, 590, 591 (9th Cir. 1988) (mail from public agencies, public officials, civil rights groups, news media has no special protection); Sallier v. Brooks, 343 F.3d 868, 875, 876 (6th Cir. 2003) (mail from legal organizations not representing the inmates and mail from county clerks has no special protection).

related to legitimate penological interests," as provided in Turner v. Safley, 482 U.S. 78, 89 (1987), Overton v. Bazzetta, 539 U.S. 126 (2003) and other Supreme Court cases.

The Court of Appeals held that safety and security of the prisons are legitimate penological interests. But the court concluded that by late 2004, neither common sense nor any evidence in the record supported the only rationale advanced by New Jersey connecting its legal mail inspection policy to those interests. That sole proffered rationale was reduction of the risk of anthrax attack on the prisons, and the only evidence in the record supporting it was the public information regarding the October 2001 anthrax mailings. The court concluded that neither common sense nor the evidence supported a significant risk that anthrax would be mailed into New Jersey prisons three years later, particularly in correspondence from lawyers and courts. New Jersey offered no other justification for its policy. Therefore, the court found, the policy bore no rational relationship to safety and security interests, and, consequently, no reasonable relationship.

The court discussed its decision in Bieregu v. Reno, 59 F.3d 1445 (3d Cir. 1995). The plaintiff there alleged that prison staff had repeatedly opened mail from federal judges outside his presence. The government had obtained summary judgment solely on the ground that the inmate had no First Amendment right to unsealed incoming legal mail at all. It offered no rationale for the mail openings. The court of appeals emphasized that "the government does not argue that the conduct alleged by the plaintiff comports with Turner."

5

59 F.3d at 1457.  Consequently, after finding that the inmate did have a First Amendment protected interest in receipt of unsealed legal mail, the court reversed the summary judgment.

Here, the record is quite different from that in Jones-Allah and Bieregu. First, the Pennsylvania Department of Corrections policy differs from New Jersey's post October 2001 policy.  Second, the record here contains extensive evidence supporting the relationship between Pennsylvania's policy and its legitimate interest in prison security and safety.

The Pennsylvania policy before the Court, DC-ADM 803, impinges only minimally, if at all, on First Amendment interests.[2]  It certainly impinges far less than the New Jersey policy.  Under the New Jersey policy, a correctional officer opened all legal mail outside the inmates' presence, without exception. Under the Pennsylvania policy, attorneys can insure that their mail will be opened only in the inmates' presence simply by obtaining a control number and placing it on the envelope. DC-ADM 803, § VI.B.2.b.  The evidence shows that attorneys use control numbers easily. Ulisny Deposition, pp. 17-19 Exhibits D-3, D-7.

As to mail from courts, the First Amendment really does not protect it from initial unsealing outside inmate presence because it is not confidential.  It consists entirely of documents readily available to the public and generally served on the parties opposing the inmate.  Although the Third Circuit has not

---

[2] The incoming mail provisions at issue here are in the DC ADM-803 attached to the Supplemental Declaration of Kimberly J. Ulisny, which is an attachment to Document 27 in the record. It is also Exhibit D-2 to her deposition.

6

considered this point, the Seventh and Ninth Circuits have so held. Martin v.
Brewer, 830 F.2d 76, 78 (7th Cir. 1987); Keenan v. Hall, 83 F.3d 1083, 1094
(9th Cir. 1996); see also, McCain v. Reno, 98 F.Supp.2d 5, 7, 8 (D.D.C. 2000).
However, the Pennsylvania DOC has recognized that mail coming from the
courts can be important to inmates, and the DC-ADM 803 provides extra
protection for it.  The policy requires that staff hand court mail directly to the
receiving inmates (not leave it in their cells or with other inmates). DC-ADM
803, § VI.B.3.  This procedure reduces risk of loss, delay, and misdelivery.  The
DC-ADM 803 also allows courts to get and use control numbers that will
assure that their mail is unsealed only in the inmates' presence. DC-ADM 803,
§ VI.B.2.b.

To the extent that the DC-ADM 803 does impinge on inmates' First
Amendment rights in legal mail, the record here contains extensive evidence of
the strong relationship between the policy and the undeniably legitimate
interest in prison security and safety, evidence that New Jersey did not offer or
even argue.  Security and safety includes safety within the prison and external
safety through prevention of escapes.  The testimony of the Secretary of
Corrections, reports of investigators, and testimony of staff involved in mail
handling at SCI-Graterford show the rational and reasonable relationship
between the policy's procedures and these important governmental interests.
Deposition of Jeffrey A. Beard, Declaration of Jeffrey A. Beard (with Escape
Report, Huntingdon, November 1999), Declaration of Charles J. McKeown (with

Privileged Correspondence Inspection and Contraband Report, September 20, 1999), Deposition of Kimberly J. Ulisny.

Secretary Beard testified to the obvious when he said that anything that enters the prisons can carry security risks, particularly when the items are sealed envelopes and packages. Beard Dep. at 8, 9; see Bell v. Wolfish, 441 U.S. 520, 553, 559 (1979).  Mail can contain cash, drugs, escape tools, maps, weapons (or items that can be fashioned into weapons), explosives, bio-hazards (chemicals); faux bio-hazards (e.g. loose powders), pornography, even body fluids, and it has. Beard Dep. at 9-12, 25-27; Ulisny Dep. at 30, 41, 42.[3]  Mail that appears from the return address to be from an attorney or court can contain dangerous material. Ulisny Dep. at 129.  That return address does not mean that the mail actually came from an attorney or court. See Beard Dep. at 33, 34, 38, 39; Ulisny Dep. at 20, 71-75; Information, Testimony, and Exhibits in From the Trial of Commonwealth v. Valdo Guilford.[4]  The thick documents (briefs, transcripts) often found in legal (or apparently legal) mail provide ideal hiding places for contraband. Ulisny Dep. at 70, 72; Escape Report, Huntingdon, November 1999, p. 23.

---

[3] The recent opinion in United States v. Davila, 2006 WL 501459 (2d Cir. Aug. 30, 2006) describes how a prisoner mailed powder in an envelope with a phony return address and marked as "legal mail" to a States' Attorneys' Office, causing fear, havoc, and closure of the Office for 2 ½ days. This kind of mailing could just as easily be made to a prison.

[4] At pp. 225-227 of the Guilford transcript, an inmate describes how he created a court envelope and other court documents.

The impetus for the attorney and court mail policy changes implemented in October 2002 was the conclusion of DOC investigators that escape tools used by an escaped murderer had been smuggled into his prison in legal mail, which at the time was opened in inmates' presence. Beard Dep. at 18-21; Escape Report, pp. 3, 22, 23, 47.[5]  The investigators concluded that opening legal mail in inmates' presence created substantial security risks not incurred when that mail is opened and inspected by mail inspectors outside inmates' presence. Escape Report, pp. 59, 60, 69, 72, 73.  A DOC staffer experienced in both mail handling and security wrote a report concluding that opening all mail from attorneys and courts in the presence of inmates presented security risks, and he included documents from several of the prisons showing security breaches, or near-breaches, through purported legal mail. Beard Dep. at 41, 42; Declaration of Charles J. McKeown, with Privileged Correspondence Inspection and Contraband Report.  He recommended that mail appearing to be from attorneys and courts be opened outside of inmate presence, like all other incoming mail. Id.

Secretary Beard, a corrections professional for over 32 years (Dep. at 4-8), agreed that opening and inspecting mail in the presence of inmates increases risks that dangerous material will get inside the prison and

_____

[5] Inmates have done the same elsewhere. See U.S. v. Young, 146 Fed.Appx. 824, 2005 WL 2173773 (6th Cir. 2005) where an inmate received a hacksaw blade in a legal pad sent in an envelope with his attorney's return address. The inmate used the blade to saw through window bars. The court noted that the inmate used the legal mail because guards opened legal mail in the inmates' presence, and, consequently, less closely scrutinized it.

altercations will arise inside the prison. Beard Dep. at  29-32.  Primarily, the

opening and inspection will take place inside the secure prison, usually in

inmate housing units, with many inmates and staff nearby. Beard Dep. at 16-

18, 29-32, 73-75.  It will usually be done by corrections officers who have

many other tasks to perform. Id.; Murray Dep. at 46, 47.  Of course, the

receiving inmate is present, and can grab or protest on the spot. Ulisny Dep. at

62, 63.  Even at Graterford, where mail inspectors take the "privileged" mail to

a place inside the prison, they are inside the prison, and the receiving inmate is

present, with other inmates and staff nearby. Ulisny Dep. at 55-58, 61,

Exhibits D-4, D-5 (photographs).  Experienced professionals have concluded

that security and safety are best served when mail inspectors, whose job is to

inspect mail, inspect all of it in their own work areas, away from the prison

housing and activity areas, out of the presence of the receiving inmates. Beard

Dep. at 13-15, 26, 27, 32, 34, 69.  The Court must accept these judgments and

find at least a rational relationship between security and opening mail with

attorney or court return addresses in the mail rooms, out of inmate presence,

unless the envelope bears a registered control number, which assures that the

item is from a legitimate attorney or court.

    The Pennsylvania policy scores well on the remaining three Turner

factors: alternative means of inmate communication, burden of acceding to

plaintiffs, and ready availability of alternative means of protecting security.

    Inmates do have an alternative way to have mail from attorneys opened

only in their presence.  They can rely on the attorneys to get and use control

numbers.  The evidence shows that attorneys use them.  While courts are less likely to use control numbers, the policy does assure that inmates will get court mail more safely than if it were treated as regular mail.  In sum, inmates will get their legal mail.  Any First Amendment impingement effected by the DC-ADM 803 will be quite small. See Overton v. Bazzetta, 539 U.S. 126, 135 (2003)(alternatives need not be the ideal); Thornburgh v. Abbott, 490 U.S. 401, 417, 418 (1989)(when considering the ability of inmates to exercise the right despite the regulation, the possible means of exercise must be viewed expansively).

Opening all mail apparently from courts and attorneys in the presence of inmates would cause burdens on the prisons in addition to the security risks already discussed.  Corrections officers, who have other duties, would have to spend more time opening and inspecting mail. Beard Dep. at 38; Ulisny Dep. at 25-27, 61, 86-92, 144, 145, Exhibits D-7, D-8.  If mail inspectors are to take all apparently legal mail to a separate location inside the prison, each prison would have to find such a location, the inspectors would have to carry the mail to it each day, and the inspectors would have to wait there for the inmates rather than working on other mail tasks, like the outgoing mail. Ulisny Dep. at 51, 57-61, 76-85.  Inmates too would have to forego other activities to get their mail.

The procedures now in the DC-ADM 803 already are alternatives that carefully balance inmates' First Amendment rights and institution security.  They were selected after consideration of other alternatives. Beard Dep. at 21-

11

23, 27, 28, 46.  They reflect compromises made (principally the provision for control numbers and the special delivery of court mail) to least impinge First Amendment interests while protecting security. Id.; see also Second Declaration of Michael A. Farnan (Document C in Defendants' Appendix to Motion for Summary Judgment).  No other ready alternatives come to mind that would not tip the scale into excessive security risks.

In sum, the record here shows that the Pennsylvania DOC's policy regarding mail to inmates from attorneys and courts is reasonably related to legitimate penological objectives.  By emphasizing the meager justification and record that New Jersey had produced, the Court of Appeals in Jones-Allah was distinguishing that case from a case like this one.  The court may also have been trying to distinguish the case from recent Supreme Court decisions, although Defendants question whether it successfully did so.

In June of this year, the Supreme Court reversed the Third Circuit, affirmed summary judgment in favor of Secretary Beard, and upheld against First Amendment challenge a Pennsylvania DOC rule that prohibited a certain category of inmates from receiving any newspapers or magazines. Beard v. Banks, 126 S.Ct. 2572 (2006).  A four justice plurality acknowledged the inmates' First Amendment interest in the publications and considered the rule under the Turner test.  It started by repeating the admonition the Court had recently made in Overton v. Bazzetta, 539 U.S. 126, 132 (2003): "courts owe substantial deference to the professional judgment of prison administrators." 126 S.Ct. at 2578.  It held that with regard to matters of professional

12

judgment, "our inferences must accord deference to the views of prison authorities." Id.  It accepted the views of a prison deputy superintendent, stated in a deposition, that the rule served the legitimate objective proffered (motivating better behavior by the inmates affected). 126 S.Ct. at 2579.  The plurality conceded that the inmates had no alternative means of exercising their First Amendment right to newspapers and magazines (they had no televisions, radios, or even telephone calls). 126 S.Ct. at 2579, 2580.  It noted that the burden on the prison of accommodating the inmates' rights was simply that the objective of the rule would be less well served. 126 S.Ct. at 2580.  Still, it found that the rule was reasonably related to the objective, accepting the prison officials' "professional judgment" and "experience-based conclusion that the policies help to further legitimate prison objectives." 126 S.Ct. at 2580.  The plurality criticized the court of appeals for "placing too high an evidentiary burden upon the Secretary" and for offering "too little deference to the judgment of prison officials about such matters." 126 S.Ct. at 2581.

The plurality opinion in Beard v. Banks is the more moderate view of the majority.  The two concurring justices argued that the inmates' convictions and sentences forfeited their First Amendment rights and delegated the inmates' supervision to the state, subject only to the Eighth Amendment. 126 S.Ct. at 2583, 2584.

The Third Circuit's approach in Jones-Allah seems inconsistent with the Supreme Court's holding and admonitions in Beard v. Banks.  However, as the court of appeals emphasized, New Jersey offered very little.  Here, Secretary

13

Beard himself has explained on the record the reasons for the Pennsylvania

DOC's attorney and court mail policy, and they are backed by studies and

experience also in the record.  The Court must substantially defer to the DOC

staff's professional judgment and enter summary judgment in favor of the

Defendants.[6]

CONCLUSION

The Court should deny Plaintiffs' Motion for Summary Judgment and

grant Defendants' Motion for Summary Judgment.  It should enter judgment in

favor of the Defendants.

<div style="margin-left: 40%">

THOMAS W. CORBETT, JR.
Attorney General of Pennsylvania

By:  s/ John O. J. Shellenberger
_____

John O. J. Shellenberger
Chief Deputy Attorney General
Attorney I.D. No. 09714
Attorney for Defendants

</div>

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107
Phone: (215) 560-2940
Fax:    (215) 560-1031

---

[6] This Court's records regarding Plaintiffs' habeas corpus cases attacking their convictions confirm what was evident before: Plaintiffs' claims in those cases are frivolous. Plaintiffs cannot pursue a claim that they have a right to access the courts to pursue those cases. Christopher v. Harbury, 536 U.S. 403, 414-417 (2002). The docket in Robinson v. Vaughn, No. 02-5758, shows that the Court of Appeals refused to issue a certificate of appealability on Plaintiff Robinson's appeal from the denial of his petition, and that this Court and the Court of Appeals have refused to entertain any further petitions or motions. The docket in Ramirez v. DiGuglielmo, No. 04-1297, shows that Magistrate Judge Rice has recommended that Plaintiff Ramirez's petition be denied. A reading of the Report confirms the petition's lack of arguable merit. The Court here can judicially notice these records.

<u>CERTIFICATE OF SERVICE</u>

I, John O. J. Shellenberger, hereby certify that Defendants' Supplemental Memorandum Of Law Regarding Recent Third Circuit And Supreme Court Cases has been filed electronically and is available for viewing and downloading from the Court's Electronic Case Filing System.  I further certify that a true and correct copy of Defendants' Supplemental Memorandum Of Law Regarding Recent Third Circuit And Supreme Court Cases was mailed on September 25 2006, by first class mail, postage prepaid to:

Thomas Robinson, DD-0143
State Correctional Institution
at Graterford
P.O. Box 244
Graterford PA 19426-0244

Luis A. Ramirez, DE-4599
State Correctional Institution
at Graterford
P.O. Box 244
Graterford PA 19426-0244

s/ John O. J. Shellenberger

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107
Phone: (215) 560-2940
Fax:    (215) 560-1031

John O. J. Shellenberger
Chief Deputy Attorney General
Attorney I.D. No. 09714

15