```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

In the Matter of:

```
                                    )
FONTROY et. al.                     )
                                    )
         Plaintiffs                 )
                                    )
         v.                         )   Action No: 02-2949
                                    )
                                    )
SCHWEIKER et. al.                   )
         Defendants                 )
```

  **AND NOW**, this    day of       , 2007, upon consideration of the Defendants' Motion for Stay Pending Appeal, it is hereby **ORDERED** and **DECREED** that said Motion is **DENIED.**

            BY THE COURT:

            _____
                            J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In the Matter of:

|   |   |   |
|---|---|---|
| FONTROY et. al. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Action No: 02-2949 |
| | ) | |
| | ) | |
| SCHWEIKER et. al. | ) | |
| Defendants | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR A STAY PENDING APPEAL**

Plaintiffs, by and through their newly re-appointed counsel, Teri B. Himebaugh, Esquire do hereby respond to Defendants' Motion for a Stay Pending Appeal of the Court's May 3, 2007 Order.[1]

Plaintiffs aver that Defendants have not met the burden of proof necessary to stay the Court's recent Order enjoining Defendants from enforcing their 'legal mail policy', which was found to be unconstitutional. Plaintiffs specifically contend that the Defendants do not have a strong likelihood of success on the merits of the appeal. Plaintiffs

---

[1] In as much as counsel has not yet had an opportunity to consult with her clients, Plaintiffs respectfully request permission, if necessary, to file a short supplementary response.

additionally aver that the Defendants will not be injured by immediate elimination of the legal mail policy; whereas the named Plaintiffs and all other similarly situated inmates impacted by the holding in this case, will be caused irreparable injury by the stay. Furthermore, Plaintiffs aver that the Defendants have not provided evidence that the public interests support a stay of this Court's Order. *Republic of the Philippines v. Westinghouse Electric Corp.*, 949 F.2d 653 (3rd Cir. 1991).

Defendants spend a great deal of their Motion arguing that prison safety and security is a legitimate goal. Plaintiffs do not contest that prisons have a legitimate penological interest in maintaining safety and security. That, however, is *not* the question that is in fact before this or the appellate court. Rather, the question before these courts is whether or not the DOC had sufficient credible and material evidence establishing that its' legal mail policy was reasonably related to that interest.

In order to competently answer that question, however, a court would have to review all of the underlying evidence that the Defendants contend supported the enforcement of the legal mail policy.

Rather than undertake to argue the credibility, veracity or weight of the facts and evidence, however, Defendants

instead urge this court to rely upon decisions made by two other judges in *Robinson and Ramirez v. Department of Corrections*, Civil Action No. 03-5180 and *Harper v. Beard*, Civil Action No. 05-1803. (Memorandum of Law, pg. 2). In both *Harper* and *Robinson*, the judges considered similar facts and claims as made by the Plaintiffs herein and rejected them.

While all three judges may have had before them the same record,[2] it appears, however, that only Judge Savage in the case at bar, actually did a thorough review and analysis of whether or not the Defendants' policy was in fact 'reasonably related to that legitimate penological interest.' The other courts did not, as Judge Savage did, conduct an independent review and analysis of the veracity, credibility and/or weight of the underlying evidence used by the DOC to support the self serving conclusions contained in their 1999 "Privileged Correspondence Inspection and Contraband Report" (hereafter "Mail Report") and Escape Report.

For example, the Mail Report states that contraband has been found in mail that appeared to have been sent by an attorney or a court by means of the sender using a phony

---

[2] According to Mr. Shellenberger, both Judge Stengel in *Robinson and Ramirez v. Department of Corrections* and Judge Davis in *Harper v. Beard*, were provided with exact copies of the exhibits and depositions which were obtained through discovery in the instant case. Furthermore, again according to Mr. Shellenberger, there were no additional depositions taken of any Defendants in either *Robinson* or *Harper*.

letterhead and envelope. However, as Judge Savage correctly pointed out, the Defendants failed to quantify those instances. "Instead, it has presented only a few instances occurring throughout the state system over a period of thirteen years." (Opinion, pg. 6). A few instances over all these years, when considering the multitude of legal mail which must have been received during that time period by the approximately 45,000 inmates incarcerated within the DOC is evidence at most of a miniscule risk. Imposition of a policy that impacts on all inmates First Amendment rights is not sufficiently justified by this extremely small risk.

 Furthermore, as Judge Savage points out, the Mail Report did not

> . . . distinguish between prohibited harmless materials and dangerous materials that threaten safety and security. It is only the latter that can reasonably be related to legitimate penological interest justifying infringing an inmate's First Amendment right. That prohibited materials entered the prison through legal mail is insufficient.

This Court then correctly concluded that the "defendants have not demonstrated that there has been any instance of a serious breach of security or risk to safety that was caused by the introduction of contraband through legal mail that was opened in the presence of an inmate." (Opinion, pg. 10)

The Escape Report was done in response to an inmate's escape from SCI Huntingdon in 1999. It was never intended to be an analysis of the DOC's legal mail policy. Rather, the investigation focused on the inmate's means of escape, the roles of staff members in that escape, etc.

The Escape Report concluded that the inmate who had escaped used a hacksaw blade and a security tip screwdriver which had been allegedly hidden in a hollowed out legal brief. Importantly, however, the authors of the report admitted that "the exact method of delivery for the suspected hacksaw blade and security screwdriver tip implement cannot be determined." (Escape Report at 22). Similarly, Secretary Beard conceded in his deposition that he had no idea where the inmate's legal brief originated. He admitted that the DOC could not determine whether it originated from an attorney, a court or a third party. (Beard dep. pg. 44-45). He further conceded that he didn't even know whether any contraband had even been secreted in that document at all. Id. at 43-44. Given the clear lack of evidence linking the escape tools to the incoming legal/court mail, the authors of the Escape Report could only speculate that the items may have possibly

entered the institution via legal mail.³ The Defendants in their Motion to not contest any of the above.

As Judge Savage points out "(n)owhere in the report is there any discussion of what that evidence was. In fact, the report failed to produce any evidence, let alone substantial evidence, linking the inmate's escape tools to legal mail." (Opinion, pg. 8).

The *Harper* and *Robinson* courts in contrast, never conducted this type of evidentiary review and analysis. Instead, they simply ". . .accord(ed) substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Harper*, pg. 21 citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Beard v. Banks*, 126 S.Ct. 2572 (2006). The *Harper* and *Robinson* courts abdicated their judicial responsibilities by failing to make their Defendants meet their evidentiary burden of proof as they must under the Constitution. *Turner v. Safley*, 482 U.S.

---

³ Defendants' assertion that Johnston unquestionably used a brief to hide these items is yet another red herring. This case is about whether or not dangerous contraband was smuggled into the facility through legal or court mail- not how the inmates hide the items once they are already in the facility.

78 (1987); *Jones v. Brown*, 461 F.3d 353 (3rd Cir. 2006), *cert. denied*, ___ S.Ct. ___, 2007 WL 789156 (March 19, 2007).

'Deferring substantially' to a prison official's judgment is quite different from turning a blind eye to the Constitution which is what the Defendants urge this court to do. A court cannot simply grant absolute and unfettered power and deference to the DOC, as it appears the Defendants urge in their Motion, simply because the DOC utters the magical words 'security' and 'safety'. Were that the case, the Constitution and the courts would be rendered moot. The courts are here specifically to ensure that the Constitution and our system of checks and balances, which requires parties meet their burdens of proof and produce credible evidence, is upheld. Without the courts ensuring that the Constitution is enforced, the DOC would have absolute power. Lest we forget Machiavelli's lesson, 'power corrupts and absolute power corrupts absolutely'.

Plaintiffs are confident that the Third Circuit will review the underlying evidence as Judge Savage has done, and will determine, consistent with Judge Savage's Opinion, that the Defendants legal mail policy was not reasonably related to their legitimate penological goal of safety and security. Given all of the above, Defendants cannot meet their burden of proving that they have a significant likelihood for

success on appeal, for purposes of the instant Motion for a Stay.

Nor will Defendants be injured by immediate elimination of the legal mail policy. In fact, as asserted by the *pro se* Plaintiffs in recent filings submitted after the Court's Order was issued enjoining the policy, there have been no security or hallway overcrowding problems caused by inmates having their legal mail opened in their presence.

Furthermore, the legal mail will still be opened by trained personnel and inspected to ensure that there is no contraband in it. Currently, legal mail is opened by such trained personnel in front of the inmate at a designated window. Defendants have not provided *any evidence* of there being any security or safety related incidents since the policy was enjoined. You can be sure if there had in fact, been any type of incident or problem, they would have presented evidence of it in their Motion.

In fact, it appears that the only complaint Defendants apparently can make is that it is a bit more inconvenient for their staff to open legal mail in front of the inmates. Defendants aver that prior to the policy, they were getting approximately 64 pieces of general legal mail per day at SCI Graterford. With a population of approximately 4000 inmates, opening approximately 64 pieces of mail a day in front of the

inmate it is addressed to is an inconsequential burden. (Ulisny Dep. pp. 57, 58, 60-61, 144, 145). Furthermore, mere minor staff inconvenience does not legally justify violating inmates constitutional rights.

Plaintiffs would be clearly injured by the imposition of a stay. This unconstitutional policy has been in effect for almost five years. Apparently, the Court only refrained from issuing an award for money damages against the Defendants in this matter due to its' finding that the Defendants had 'qualified immunity'.

Now, however, that the Defendants are on notice that this policy violates inmates' constitutional rights, permitting the policy to remain in effect pending appeal, which can take upwards of a year or more, will without doubt result in constant, recurring violations of the First Amendment rights of the over 45,200 inmates incarcerated in the Department of Corrections. Even assuming arguendo that each inmate only receives as little as one piece of legal mail (attorney or court) per year, if the policy remains in effect, there will potentially be as many as 45,200 new claims, each with the potential for money damage awards, attorney fees and costs.[4]

---

[4] Inmates will no doubt assert that during the appellate period the policy caused them injury in that it hindered

In fact, it seems contrary to public policy to place a stay and/or limit the scope of this action to the named Plaintiff's only. By doing so, the Defendants are ensuring that the Commonwealth will be sued by an untold number of other inmates who were not 'named parties' to this action for money damages, attorney fees and costs which will ultimately have to come from the state treasury.

Finally, Defendants argue that the Order eliminating the policy should be stayed because it requires the Defendants to change a policy that has been in effect for almost five years. (Memorandum of Law, pg. 1, 7). Maintenance of the status quo, simply because it is the status quo, has absolutely no legal weight or bearing on whether or not a stay should issue.

---

their ability to confidentially communicate in a timely manner with their attorneys and the courts, thereby jeopardizing if not irreparably compromising criminal and civil cases they are involved in. These allegations, if proven, would then result in an award of monetary damages that could not be eliminated by way of an affirmative defense of 'qualified immunity' as in the case at bar. Furthermore, even if there were no other damages found, the inmates would still be entitled to nominal damages on each and every case to compensate each inmate for the violation of their constitutional rights. Even nominal damages (not to mention attorney fees and costs) add up to very significant amounts when the 'flood gates' are opened to this claim, as will happen if the stay is put in place.

In conclusion, Defendants have not met their burden of proof that the stay that they request is legally appropriate. Therefore, Plaintiffs respectfully request that the Court deny Defendants' Motion for a Stay Pending Appeal.


Date:  May 17, 2007           BY:  __TH1123_____
                                   TERI B. HIMEBAUGH, ESQUIRE
                                   ATTORNEY FOR PLAINTIFFS

```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

In the Matter of:

FONTROY et. al.                    )
                                   )
        Plaintiffs                 )
                                   )
        v.                         )   Action No: 02-2949
                                   )
                                   )
SCHWEIKER et. al.                  )
        Defendants                 )

**CERTIFICATE OF SERVICE**

    I, Teri B. Himebaugh, Esquire, attorney for the Plaintiffs, hereby certify that on May 17, 2007, I served Plaintiffs' Response to Defendants' Motion to Stay Pending Appeal, which was filed electronically and First Class Mail, postage prepaid on the following:

John Shellenberger, Esq.
Office of the Attorney General
21 S. 12th St. 3rd Fl.
Philadelphia, PA 19107

Derrick Dale Fontroy AY7513
50 Overlook Drive
Labelle, PA 15450-1050

Theodore Savage CB2674
SCI Cresson
P.O. Box A
Cresson, PA 16699-0001

Aaron Christopher Wheeler BZ2590
SCI Graterford
P.O. Box 244


Date: May 17, 2007                 TH1123_____
                                   TERI B. HIMEBAUGH, ESQUIRE