IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DERRICK DALE FONTROY, I.,** : | **CIVIL ACTION** |
| **THEODORE B. SAVAGE, J.D., and** : | |
| **AARON CHRISTOPHER WHEELER** : | **NO. 02-2949** |
| : | |
| **v.** : | |
| : | |
| **JEFFREY A. BEARD,** : | |
| **DAVID DIGUGLIELMO, and** : | |
| **KIM ULISNY** : | |

## MEMORANDUM OPINION

Savage, J.                                                                                             June 20, 2007

The defendants move, pursuant to Fed. R. Civ. P. 62(c), to stay execution of the May 3, 2007 Order enjoining them from opening legal and court mail addressed to inmates outside their presence. Because the defendants have not made a strong showing that they are likely to succeed on the merits and that they will be irreparably harmed absent a stay, and because the issuance of a stay will cause the plaintiffs irreparable injury and will not benefit the public interest, the motion will be denied.

### I. Background

The injunction arises out of a challenge to the constitutionality of the Pennsylvania Department of Corrections' ("DOC") mail policy that permits prison staff to open incoming legal and court mail that does not bear a prison issued control number outside the presence of the inmates to whom it is addressed.[1]  Applying the test for examining the

---

[1] The defendants are Pennsylvania prison officials. Jeffrey A. Beard is the Secretary of Corrections; David DiGuglielmo, the Superintendent of SCI-Graterford, the prison where the plaintiffs were inmates; and Kim Ulisny, the mail room supervisor at SCI-Graterford.

constitutionality of prison regulations established by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987), I determined the policy did not meet constitutional standards because it was not reasonably related to the legitimate penological interest of prison safety and security.[2] I also found that even assuming there was a rational relationship between the mail policy and the DOC's legitimate interest in prison safety and security, the three factors of the second part of the *Turner* test were not met. *Fontroy v. Beard,* Civ. A. No. 02-2949, 2007 WL 1289936, at *7-8 (E.D. Pa. May 3, 2007).[3] In doing so, I recognized that prison safety and security is a legitimate and valid penological interest, and that "substantial deference is given to those running the prison in determining the means of accomplishing the legitimate goals of the corrections system, especially where security is implicated." *Fontroy*, 2007 WL 1289936, at *3.

On May 7, 2007, the defendants filed a Motion to Alter or Amend the Judgment of May 3, 2007, which was denied on May 8, 2007. On May 10, 2007, the defendants appealed the orders of May 3 and May 8, 2007 to the Third Circuit Court of Appeals, and filed the instant motion for stay.

---

[2] The *Turner* Court set out a two-part test for considering a challenge to a prison regulation. A court must first determine whether there is a valid, rational connection between the prison regulation and a legitimate governmental interest. If the connection is established, the court then evaluates three factors: (1) whether alternative means of exercising the right remain open to inmates; (2) the impact accommodation of the asserted prison right will have on the prison generally; and (3) whether there is an absence of ready alternatives for furthering the governmental interest. *Turner*, 482 U.S. at 89-90. Only if the regulation passes the first step, the rational connection standard, are the remaining three factors considered.

[3] Because the inmates cannot require their attorneys or the courts to obtain and use a control number to identify communications as privileged, they have no reasonable alternatives that could fully accommodate their rights. In addition, the control number procedure is not necessarily effective in preventing contraband from entering the prison through the mail because an employee of an inmate's attorney or of the court, who can get access to control numbers and who was determined to introduce contraband through the mail, could do so. Finally, based on the testimony of the mail room supervisor, the burden to the prison in opening legal mail in the inmates' presence is *de minimus*. *Fontroy*, 2007 WL 1289936, at *7-8.

## II.  Discussion

*Standard of Review*

A federal district court, in its discretion, may "suspend, modify, restore or grant an injunction during the pendency of [an] appeal." Fed. R. Civ. P. 62(c). In determining whether to grant a stay pending appeal, the court must consider four factors: (1) whether the applicant has made a "strong showing" of likely success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether a stay will substantially injure the other parties; and (4) how the public interest will be affected. *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987). *See also Republic of Philippines v. Westinghouse Elec. Corp.,* 949 F.2d 653, 658 (3d Cir.1991). Each of these factors is analyzed "in light of the individualized considerations relevant" to the case. *Republic of Phillippines*, 949 F.2d at 658. Considering these factors, I conclude that a stay should not issue.

*Likelihood of Success on Appeal*

The defendants present essentially two arguments in support of their contention that they are likely to succeed on the merits on appeal. First, they argue that because two district judges applying the same Third Circuit decision that I did, *Jones v. Brown*, 461 F.3d 353 (3d Cir. 2006), have upheld the constitutionality of the same policy,[4] it is likely that the Third Circuit will reverse the ruling in this case. Second, they contend that I did not give the prison officials' professional judgment the required substantial deference, citing the Supreme Court's recent decision on prisoners' First Amendment rights relating to prison

---

[4] *See Robinson v. Pennsylvania Dep't of Corrections*, Civ. A. No. 03-05180, 2007 WL 210096 (E.D. Pa. Jan. 23, 2007) (Stengel, J.); and *Harper v. Beard*, Civil Action No. 05-1803 (E.D. Pa. April 23, 2007) (Davis, J.)

regulations, *Beard v. Banks*, 126 S. Ct. 2572 (2006), in which the Court upheld the constitutionality of a prison regulation denying extremely violent and recalcitrant inmates access to newspapers, magazines and personal photographs in order to serve the penological interest of modifying the behavior of these particular inmates.

That two other judges ruled differently does not necessarily mean that the defendants are likely to prevail on appeal. The *Harper* and *Robinson* courts undoubtedly gave thoughtful and well reasoned consideration of the issue and the facts presented. However, they did not have the benefit of a record developed and analyzed by counsel. The plaintiffs in the other cases acted *pro se*. In this case, counsel for the inmates had marshaled the evidence and critically presented it. The attorneys challenged the DOC's unsupported statements by presenting undisputed facts that contradicted those statements.

Neither *Robinson* nor *Harper* distinguished between harmful and harmless "contraband" in analyzing the DOC's perceived threat to prison safety and security - the penological interest asserted by the DOC. The analysis in this case, which focused on contraband that presented a threat to safety and security, produced no evidence to support the DOC's perceived threat, which was used to justify the infringement of the inmates' First Amendment rights.

I conducted a thorough analysis of the evidence and did not accept the conclusions of the DOC officials without a discerning look at the bases for them. Looking beyond the defendants' assertions and scrutinizing the rationale proffered by them, I was firmly convinced that the defendants had failed to establish a reasonable connection between the penological interest in safety and security, and the legal mail policy.

I concluded that the connection between the change in the prison legal and court mail policy, and its underlying rationale was tenuous and remote. The policy was an overreaction to a single escape incident and a few isolated violations of the contraband policy involving legal mail that may or may not have occurred. Because the defendants did not establish a reasonable connection between the DOC's valid penological interest in safety and security, and the policy of opening legal and court mail outside the inmates' presence, I found that the mail policy does not pass the first step of the *Turner* analysis. *See Fontroy*, 2007 WL 1289936, at *3-7.

The defendants note that the Third Circuit issued a stay after the district court had refused to do so in the *Allah* case, which was consolidated on appeal with the *Jones* case.[5] At the time the Third Circuit stayed enforcement of the injunction in the *Allah* case, the issue had not been decided. The legal mail issue is no longer an unsettled issue. In *Jones*, the Third Circuit resolved any doubt about the vitality of *Bieregu's*[6] holding that prisoner legal and court mail is protected by the First Amendment. *Jones* guided my decision in this case.

The Supreme Court's decision in *Beard v. Banks*, 126 S. Ct. 2572 (2006), does not lend support to the defendants' argument that they are likely to succeed on the merits of the appeal. The defendants mischaracterize *Banks* as standing for the proposition that prison officials need not provide factual support for the rational connection between the

---

[5] *See Supplement to Defs.' Mot. for Stay* (Doc. No. 311) (referring to *Allah v. Gov. of New Jersey, et al.*, Court of Appeals No. 04-4426). *Allah* was one of two New Jersey district court decisions that the Third Circuit reviewed in *Jones*. The district court in *Allah*, in contrast to the district court in *Jones*, had held the New Jersey prison incoming legal mail policy unconstitutional.

[6] *Bieregu v. Reno*, 59 F.3d 1445 (3d Cir. 1995).

challenged prison regulation and the state's interest, and that their professional judgment alone is sufficient.[7] If one were to read the *Banks* decision as the defendants do, prison officials could do what they want without judicial scrutiny by merely invoking the substantial deference standard. Courts may not accept such assertions at face value. Deference does not mean accepting the prison officials' conclusions. There must be a basis for the officials' exercise of their judgment. Thus, the courts must still determine if the officials' conclusions are supported by evidence.

Unlike in this case, in *Banks*, the prison administration provided factual support for the rational connection between the challenged prison regulation and the state's interest. Specifically, the prison officials provided a statement of undisputed facts setting forth the bases for the regulation. The statement of facts referred to depositions, policy manuals and pleadings. The plaintiff did not challenge any of these facts, which were deemed admitted. *Banks*, 126 S. Ct. at 2577.

The facts and the prison regulation in *Banks* are distinguishable from this case. First, the policy in *Banks* applied only to the most difficult, violent prisoners, while the policy here applies to the general population of inmates across the entire state system. Second, the policy in *Banks* involved the modification of inmates' behavior, using the privilege of reading magazines and newspapers as an incentive to improve conduct. The policy here, in contrast, involves the opening of inmates' legal and court mail outside their presence under the guise of security concerns.

The defendants argue that this court did not follow the deferential standard owing

---

[7] *Defendants' Br.* at 3

prison administrators that *Banks* requires. On the contrary, I gave substantial deference to DOC prison officials, recognizing that "substantial deference is given to those running the prison in determining the means of accomplishing the legitimate goals of the corrections system, especially where security is implicated." *Fontroy*, 2007 WL 1289936, at *3 (*citing Overton v. Bazzetta*, 539 U.S. 126, 132-33 (2003)). Nevertheless, after according such deference, I concluded that the DOC failed to establish that its mail policy was rationally related to that interest. *Fontroy*, 2007 WL 1289936, at *7.

*Banks* was decided two months before *Jones*. Consequently, the Third Circuit was aware of the Supreme Court's edict that substantial deference be given prison officials' judgment in matters of prison policy. Applying this standard, the *Jones* court still found that the New Jersey prison administrators had failed to establish a reasonable rationale for its legal mail policy.

No cases have been decided and no events have occurred in the Pennsylvania prison system since the May 3, 2007 Order issued that would alter the *Turner* analysis. The decision was based on established Supreme Court and Third Circuit case law that recognizes the First Amendment right of inmates to freely communicate with their attorneys and the courts. *See Jones*, 461 F.3d at 358-59 (*citing Bieregu*, 59 F.3d 1445, 1452 (3d Cir. 1995)). According substantial deference to those running the prison in determining the means of accomplishing the legitimate goals of safety and security in the corrections system does not excuse the DOC from establishing a rational connection between the legal and court mail policy and the prison's interest in safety and security.

*Injury to Defendants Absent a Stay*

The defendants argue that they "will suffer injury" absent a stay because more

unopened mail will be brought to the inmates' housing units where a variety of staff people will open and inspect it, increasing security risks. They also argue that they will bear an increased "administrative burden" because they will likely have to open sixty-four, instead of twenty-five, pieces of legal mail each day, and that there will be a crowded maintenance corridor.[8] This argument, which was made in the course of this case, was rejected because the DOC could not demonstrate a factual basis for it. *See Fontroy*, 2007 WL 1289936, at *7-8. Indeed, it was the same process that had been used for years before the DOC implemented the control number policy.

A showing of irreparable harm requires "irreparable" and not just "merely serious or substantial" harm. *ECRI v. McGraw Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). The defendants have failed to demonstrate that they will suffer any irreparable harm. In the May 3, 2007 Memorandum Opinion, I explained how the defendants had failed to show that opening inmates' legal mail in their presence posed a security risk. In their motion for stay, the defendants have not pointed to any additional security risk that will arise from opening all legal mail in the presence of inmates. With respect to any purported increased administrative burden, opening sixty-four pieces of mail in the presence of inmates at SCI-Graterford out of approximately 4,000 inmates is not a substantial, much less irreparable, burden. Moreover, when the DOC changed its mail policy to open all legal and court mail outside the presence of inmates, it did so for purported security reasons – not to address any administrative burden. If the DOC was administratively capable of opening all legal and court mail in front of inmates for years prior to October 2002 without any

---

[8] *Defs.' Br.* at 6-7

financial or personnel burden, it can do so now.

Significantly, there were no reported safety and security incidents related to the opening of legal mail in the presence of the inmates under the prior policy. Nor have there been any security breaches where the mail has been opened in front of the inmates since the entry of the May 3, 2007 Order. Therefore, the defendants have failed to meet their burden of showing irreparable injury absent a stay.

*Injury to Plaintiffs If a Stay is Issued*

It is well-settled that "[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Swartzwelder v. McNeilly*, 297 F.3d 228, 241 (3d Cir. 2002) (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Third Circuit has recognized an inmate's important First Amendment right to freely communicate with his attorney and the courts. *See Jones*, 461 F.3d at 358-59 (*citing Bieregu*, 59 F.3d at 1452). Allowing the defendants to continue the mail policy would permit an ongoing violation of an important constitutional right. Thus, because an ongoing violation of First Amendment rights constitutes irreparable injury, the inmates would be irreparably injured by a stay.

*Public Interest Considerations*

The public interest favors protecting constitutional rights. *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883-84 (3d Cir. 1997). *See also ACLU v. Reno*, 217 F.3d 162, 180-81 (3d Cir. 2000) ("[N]either the government nor the public generally can claim an interest in the enforcement of an unconstitutional law.") The Constitution protects all citizens, not just a few. When any citizen's constitutional rights are violated, all citizens are affected.

The defendants concede that the protection of First Amendment rights is in the public interest, but they argue that the safety and security of the state's correctional institutions trumps that interest.[9] Undoubtedly, the safety and security of the DOC's facilities is in the public interest. However, there has been no demonstrable threat to prison safety and security arising out of the opening of legal and court mail in the presence of the addressees. Therefore, the public interest runs in favor of protecting the First Amendment rights implicated in this case.

## Conclusion

The defendants have not made a "strong showing" that they are likely to succeed on the merits, nor have they shown that they will be irreparably harmed absent a stay. On the other hand, a stay will cause irreparable injury to the plaintiffs and will not benefit the public interest. Thus, the motion for a stay will be denied.

---

[9] *Defs.' Br.* at 7